OPINION OF THE COURT
David Levy, J.
Defendant has been indicted for the crimes of robbery in the second degree, burglary in the second degree and assault in the second degree. The People intended to have the complaining witness make an in-court identification of the defendant upon the trial. Prior to the trial the People had consistently stated that there had been no previous identification of the defendant by the complainant, at least not under police auspices. Immediately prior to commencement of jury selection the People first informed the defendant that the police had previously shown the complaining witness, a 73-year-old woman, a single photograph of the defendant, but only for the purpose of providing information to the police as to the person to be arrested for the commission of the crimes charged herein and not for identification purposes.
The defendant promptly made this application to exclude any in-court identification testimony by the complaining witness. Defendant contends that the viewing of the photograph by the witness prior to trial was a previous identification. Since there was a previous identification, defendant argues CPL 710.30 (subd 1, par [b]) requires notice that this witness, who had previously identified the defendant, intends to make an in-court identification. Therefore, since no proper notice was given, CPL 710.30 (subd 3) requires that, in the absence of such notice, no in-court identification testimony by such witness is admissible. This, says defendant, would be true whether or not there is any independent source for her in-court testimony.
It is the People’s contention that the viewing of the photograph by this witness was not a previous identiñeation within the meaning of CPL 710.30 (subd 1, par [b]) because the police *764 showed the photograph to the witness in order for them to be able to arrest the right man and not for purposes of identification by the witness, since the witness had known the defendant for several years, had seen him often, had spoken to him, knew his name and was already certain that he was the person who committed the crime. In addition, the People contend that pursuant to CPL 710.30 (subd 3) even if this was a previous identification within the meaning of CPL 710.30 (subd 1, par [b]), there is clearly an independent source for the in-court identification by the witness and therefore she may testify even though no notice as required by CPL 710.30 (subd 1, par [b]) was served.
The court directed a preliminary hearing on two factual questions: (1) the circumstances involving the showing of a single photograph of the defendant to the witness by the police, and (2) whether or not, apart from this viewing of a single photograph of the defendant previous to the trial, the witness had an independent source for her in-court identification of the defendant.
The court finds from all the credible evidence, beyond a reasonable doubt, that prior to April 24, 1978, the date of the alleged commission of the crimes herein, the complaining witness knew the defendant for a period of approximately five years. Although defendant did not live in the same apartment building as the complainant, he was the grandson of the superintendent of the building and had worked from time to time around the building and was seen quite often by the complainant and had been spoken to by the complainant on several occasions. On one occasion the complainant "baby-sat” for defendant’s child. She knew his first name as Rudy, but did not know his last name.
On April 24, 1978, someone knocked on the complaining witness’ door. She let him into the apartment and he then knocked her down several times, took $100 in cash and then put her in her bathroom and left the apartment. When complainant recovered she made a report to the police, describing the crimes and describing the man who committed them and stated he was "Rudy”, the man she had known for five years.
Several weeks later Detective Gaffney found in the police files a "mug shot” of a Rudolph Cannon, the defendant herein, and brought it with him when he visited the complainant. It was the only one in the file matching the name and descrip *765 tion furnished to him. He showed the photograph to the complaining witness and asked her: "Is that Rudy?” She said: "Yes, that’s Rudy.”
One of the contentions of the People is that even if there was a previous identification by the witness there is an independent source for the complaining witness’ in-court identification and clearly, since she had known the defendant for five years, had seen him often, had spoken to him, knew his name and baby-sat for him, and that she could not be influenced by the showing of a single photograph and therefore, her testimony should be admissible. Clearly, if notice had been given to defendant and a motion to suppress had been made, this court, even if it found the previous identification improper, might well have found an independent source for the in-court identification and permitted the testimony. If the court excludes all identification testimony, including that based upon an independent source, defendant would obviously be in a better position than if he had received the notice required. This is a very difficult contention to answer.
In order to place this issue in context it is necessary to look at the statutory scheme and the United States Supreme Court decisions involving in-court identification testimony by a witness who has previously identified a defendant. CPL 710.30 (subd 1, par [b]) provides: "Whenever the people intend to offer at a trial * * * (b) testimony regarding an observation of the defendant * * * at the time or place of the commission of the offense * * * to be given by a witness who has previously identified him as such, they must serve * * * a notice of such intention, specifying the evidence intended to be offered.”
CPL 710.20 (subd 5) provides that defendant may then make a motion claiming that improper identification testimony may be offered against him and that the court may suppress or exclude the testimony on the ground that it consists of potential testimony regarding an observation of the defendant at the time or place of the commission of the crime which would not be admissible on trial, "owing to an improperly made previous identification of the defendant by the prospective witness.” (Emphasis supplied.)
CPL 710.60 provides for either a summary determination of the motion as a matter of law or a hearing on the allegations depending on the circumstances.
The purpose of this statutory scheme was to provide the procedures necessary to conform with the hearing required by *766 the United States Supreme Court, prior to the trial, in United States v Wade (388 US 218), Gilbert v California (388 US 263), and Stovall v Denno (388 US 293), in order to determine whether or not the previous identification was proper or "tainted” (violated due process) and if it was tainted, whether or not the in-court identification was tainted by the improper previous identification (i.e., "owing” to an improper previous identification, CPL 710.20).
The CPL 710.30 (subd 1, par [b]) notice and the motion provision provide a clear procedural method complying with due process requirements and the hearing requirements of the Supreme Court. In addition, CPL 710.30 (subd 3) provides for a penalty for not giving the required notice: "In the absence of service of notice upon a defendant * * * no evidence” regarding an observation of the defendant at the time or place of the commission of the offense may be given by a witness who has previously identified him as the person who committed the offense.
CPL 710.30 (subd 3) states that "no evidence” of identification may be offered if the required notice was not given. It does not say no evidence "owing” to the improper previous identification. Under CPL 710.20, if the in-court identification is not "owing” to the improper previous identification then the witness may testify. In the majority of cases there is an independent source and the in-court identification testimony is admissible, because it is not "owing” to the previous identification.
CPL 710.30 (subd 3) does not provide for an independent source since it clearly says "no evidence” of identification can be offered at trial. It does not seem to provide a court with the same leeway as CPL 710.20, provided there was a previous identification by the witness.
It could, of course, be argued that the Legislature did not intend such a result at all; that this is an oversight; that this seems unjust and unfair and that a court should conform its decision to what it thinks would be the result that the Legislature intended.
The difficulty with that argument is that once you go behind the plain meaning of the statute, there are just as many good reasons for saying that the Legislature did intend exactly what it said, as there are for saying that it was a legislative oversight. For example, in CPL 710.20, the identification testimony is only excluded if the potential in-court identifica *767 tion would be inadmissible "owing” to an improper previous identification of the defendant by the witness. Clearly, the Legislature knew how to provide for testimony from an independent source when it wanted to.
In addition, if despite the lack of notice and consequently a lack of a Wade hearing, the Legislature had permitted testimony of an identification in court when there had been a prior identification would not this violate the requirement of a pretrial hearing laid down in Gilbert v California (388 US 263, 272, supra) where the court said: "The admission of the in-court identifications without first determining that they were not tainted by the illegal lineup but were of independent origin was constitutional error”?
Since the statute was drawn in the light of these cases, perhaps the Legislature was aware that it could permit identification testimony based upon an independent source after a hearing and could not permit such testimony without a hearing. Therefore, if no notice was given and, therefore, no hearing held "no” identification testimony could be constitutionally permitted. Clearly, this position is as likely as is a legislative oversight.
Although it might be theoretically constitutional in each case to hold a hearing and to decide the issue of independent source, it would destroy the statutory scheme, of notice, a motion to suppress and a hearing prior to trial. There would then be absolutely no penalty on the People for failure to comply with CPL 710.30 (subd 1, par [b]) notice provisions and the People could then decide in what situations notice would be required or should be given.
It might be interpolated into the above section that if, as a matter of law, the proof shows there was no tainted identification or there is an independent source for the in-court identification, that it should be admissible. In the light of the plain and unambiguous language of CPL 710.30 (subd 1, par [b]), this is a matter for legislative amendment. (If the language had been ambiguous, perhaps, this court could interpolate such language. But clearly, the language is absolutely unequivocal.)
As to the People’s claim that good cause has been shown for failure to give the CPL 710.30 (subd 1, par [b]) notice and, therefore, the court may permit such notice now and hold a Wade hearing the court finds that three Assistant District Attorneys knew that the police had shown a photograph of *768 the defendant to the complaining witness and that she had said he was the man in the photograph. If notice is required under CPL 710.30 (subd 1, par [b]) clearly then there was no "good cause” shown for not giving the notice (People v Briggs, 38 NY2d 319). It was merely a decision by the attorneys that notice was not required.
Therefore, the key issue in this case is whether or not there was a previous identification by this witness. If there was, clearly based upon the above analysis, the in-court identification would be prohibited. If there was no previous identification, then CPL 710.30 (subd 1, par [b]; subd 3) would not apply and the in-court identification would be admissible.
Since the court felt that this was not an issue to be determined by the People, ex parte, and that it could not determine the facts of the viewing on a mere offer of proof, it permitted an evidentiary hearing to determine the facts and circumstances of the exhibition by the police of a single photograph to this witness. This was not to determine whether or not the procedure was proper but whether or not there was a previous identification within the meaning of CPL 710.30 (subd 1, par [b]; subd 3).
The People have contended that this witness did not previously identify the defendant within the meaning of CPL 710.30 (subd 1, par [b]) since she had known the defendant for five years, had seen him often and even "baby-sat” for him and was certain that he was the one who committed the crimes prior to viewing the photograph in question; that she merely described the defendant to the police by means of the photograph shown to her.
From the evidence on the hearing, the court finds that the People have proved beyond a reasonable doubt that the witness was convinced in her own mind that "Rudy”, the man she had known for five years and had seen often, was the man who committed the crimes. When she was shown his photograph by the police, she was asked, "Is this Rudy?” and her answer was: "Yes, that’s Rudy.” She was not asked if this was the man who committed the crimes.
There is a line of cases involving police officers who view the defendant prior to trial. These cases indicate that these are not previous identifications. Based upon the expertise of a police officer and the fact that he is not a victim of a crime and is less apt to be excited or overwrought, he is not identify *769 ing the defendant in court from a photograph or a lineup (even if improper) but is basing his identification upon his own observations. Perhaps these cases are best exemplified by People v Morales (37 NY2d 262). There the court, on appeal from a judgment after the testimony had been permitted, without any CPL 710.30 (subd 1, par [b]) notice, said that the viewing before trial was not for purposes of identification but to assure the police officer that his backup team had arrested the man he intended. The police officer had viewed the defendant through a two-way mirror at the precinct where the defendant was being held. The court carefully pointed out that the officer was not the ordinary witness to a crime. His participation was deliberate and planned. It was his job. He was trained and experienced. He could be expected to make careful observations in order to make a detailed in-court identification. A second viewing by him would not have the same dangers as a second viewing by a nonprofessional.
Clearly, if the complainant did not know the defendant before and was not sure of the identity of the person who committed the crime, this theory could not be extended to a 73-year-old woman, excited, injured, frightened and not trained for observations of this kind. Nevertheless, can it be said that she was identifying the defendant when she already knew who he was (of course, this idea on her part may or may not have been mistaken) and merely told the police that the picture shown to her was "Rudy,” the man she claimed committed the offenses charged? (See People v Gray, 47 AD2d 674.) The court finds upon all of the evidence elicited at the hearing that this was not an "identification” by the witness, but a means of showing the police whom to arrest.
Obviously, there is a danger to the People in adopting the procedure used in this case, for if the court determines in a particular case that there was an "identification” no in-court identification testimony would be admissible.
Therefore, under the circumstances of this case, the court overrules defendant’s objections to the proffered in-court identification of the defendant by the complaining witness and will permit the People to offer testimony by the complaining witness regarding observations of the defendant at the time or place of the commission of the crime.