THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL ANDRIANI, CARLOS BOUTUREIRA, JOSEPH CHIAPETTI, MICHAEL DOYLE, ROBERT MCLAMB and ANDRES SANCHEZ, Appellants.

First Department, March 13, 1979

### APPEARANCES OF COUNSEL

*Conrad F. Ferrigno* of counsel *(Michael P. Direnzo,* attorney), for Michael Andriani, appellant, and *(David M. Markowitz,* attorney), for Joseph Chiapetti, appellant.

*Irwin Rochman* for Robert McLamb, appellant.

*Robert Louis Cohen* for Andres Sanchez, appellant.

*John James Janiec* for Michael Doyle, appellant.

*Ronald D. Degen* of counsel *(O'Rourke, McGovern & Degen,* attorneys), for Carlos Boutureira, appellant.

*Robert M. Morgenthau, District Attorney (Robert M. Pitler, Richard Hamburger* and *John Moscow* of counsel), for respondent.

### OPINION OF THE COURT

MARKEWICH, J.

On the evening of September 8, 1976, Washington Square Park in New York County was invaded by a group of men armed with clubs, sticks, bats and other weapons, apparently bent on driving out a number of denizens of that area. During

the brief course of events several persons were attacked, resulting in a homicide and injuries to victims of assault. The six defendants-appellants involved in these appeals were convicted of various crimes after trial by a jury and received various sentences. We consider the sentences appropriate.

Although there were a number of witnesses who were victims of the assaults and other crimes, and others as well to provide corroborative testimony, a good part of the evidence was supplied by accomplices or witnesses who colorably might be claimed to be such. The jury was properly instructed on the law applicable to this type of situation; the evidence was sufficient, depending on acceptance or rejection by the triers of the fact, to provide a basis either way as to accomplice status, as well as for corroboration where necessary. (See *People v Basch,* 36 NY2d 154, 157.) There was sufficient evidence and an appropriate charge on the applicable law to sustain every count as to which the jury convicted.

■ It was unfortunate that a newspaper article with a headline suggesting intimidation of witnesses by defendants somehow found its way into the jury room. The court inquired into this circumstance *in camera* without the presence of either defendants or counsel, but using questions provided by counsel. Presence of the defendants was not required; "the Trial Justice's questioning of the juror in chambers under the circumstances present here did not constitute a material part of the trial." *(People v Mullen,* 44 NY2d 1, 5-6.) The presence of counsel for six defendants in this scene would have been disruptive and harassing. The record made of the proceedings demonstrates even-handed fairness in the inquiry. There was as well complete absence of that adversary-type of atmosphere which is inevitably the accompaniment of probing cross-examination carried on by an advocate. Actually, the only real objection to this wise exercise of discretion by the trial court is based on technical grounds. This proceeding did not have as its object the determination of guilt or innocence but was designed to assist the court in an exercise of discretion. We see no significant probability of prejudice in the method employed.

■ We do, however, find otherwise as to a ruling made by the court during trial (CPL 710.40, subd 2) on an application to reopen a so-called *Wade* hearing involving identifications made by the witness Febee (CPL 710.20, subd 5). Febee had been assaulted, he testified, by defendant Doyle; he also identi-

fied defendant Andriani as having been the active participant in the assault made on one Warren, though others were involved in the latter crime as accomplices. Obviously Febee was a key witness, but his identity was never made known to defendants or their counsel prior to the trial, and certainly not at the lineup, staged under most peculiar circumstances, characterized by the trial court as "not a mode to be followed." A curtain was hung in such a way as to preclude any observer from seeing who was engaged in the process of attempting to identify those in the array. Febee had been shown a set of photographs of known or suspected participants in the fracas by police in circumstances not entirely known. There were other factors in respect of Febee indicating that examination of this sole witness as to one defendant, and important witness as to another, would have been appropriate. His military service, spent in police work, had been as an expert in identifying deserters from photographs he had studied; this could have cut either way, making him an expert in identification or, contrariwise, one accustomed to having an image burned on his mind by a photograph. Further, Febee had, immediately before the events in the park, consumed a quantity of alcohol and had also smoked marihuana, though he testified that his mind had been cleared by exercise with a frisbee. In addition, Febee had no more than a split-second interval in which to observe the person who committed the assault upon him.

When Febee—referred to up to that point as "Mr. X"—was produced as a witness, counsel, not having had a prior opportunity, moved to have the *Wade* hearing reopened for examination as to possible suggestion practiced upon the witness. The application was summarily denied. In the special circumstances of this case, we hold this to have been error requiring reopening of the hearing. The factors involving Febee's ability to observe, whether as affected by shortness of time or possible impairment of his senses by substances taken internally, or prior training, raise issues cognizable only by the triers of the fact. Taken by themselves, they do not provide a foundation for a *Wade* hearing. However, added to the secrecy surrounding the lineup, and the exhibition to Febee of the photographs of suspects, they do furnish such a basis. In short, in the circumstances found in this case, it would have been appropriate to order a *Wade* hearing upon timely motion therefor, or as here, where his identity was kept secret prior thereto, at

the trial itself. It is not a novel proposition that the lineup is a critical stage in testing identification and that what happens there is to be preserved for use by defense counsel at a pretrial suppression hearing *(United States v Tolliver,* 569 F2d 724, 728); that any pretrial confrontation of a defendant should be examined to determine whether there has been interference with his right meaningfully to conduct cross-examination *(United States v Wade,* 388 US 218, 227); that the element which is the focus of the examination is the reliability of the identification and its consequent admissibility *(Manson v Brathwaite,* 432 US 98, 114); that, when a suppression hearing pursuant to CPL article 710 is conducted under circumstances which do not afford a defendant a proper opportunity to test the validity of an identification, a new or reopened hearing becomes necessary *(People v Buie,* 66 AD2d 689). This court, confronted by a somewhat similar situation, fashioned a similar remedy some years ago. In *People v Martin* (35 AD2d 786) a witness saw the defendant in what was characterized as a "showup," i.e., presentation of a suspect to a prospective witness, alone, without others with him to provide possibility of an alternative choice, thereby strongly suggesting that the person shown should be identified. The witness did not appear at the hearing. "At the hearing, defense counsel asked that he be produced by the District Attorney. He was not produced, and the hearing court gave no direction that he be produced. His version of the circumstances at the times he saw the defendant should have been most relevant in arriving at a finding concerning elements of possible suggestion, and he should have been called even if it had been necessary for the court to call him. That * * * [the witness] testified thereafter at the trial and was cross-examined and that the jury apparently accepted his identification is of no moment; what concerns us is that his evidence was not available as part of the process leading to the findings and conclusions of the hearing court. Accordingly, we direct that the hearing be reopened to that end." *(People v Martin, supra.)*

Cross-examination of Febee at the trial was not a substitute for the *pretrial Wade* hearing as envisioned by the case which gave that procedure its name, regarded as so important in our law when improperly carried out that it presents one of the

rare instances in which the right to appeal survives a plea of guilty (CPL 710.70, subd 2).*

Doyle, as has been said, was identified as Febee's assailant by the victim himself; his other convictions were vicariously earned as an accomplice. Andriani, aside from having been identified by Febee as Warren's assailant, was also identified by Warren. Further he was convicted of several other counts. However, we have no way of knowing the extent to which Febee's identification of either played a part in the general process of the jury's evaluation in respect of the other counts. Therefore, both appeals must be held in abeyance *in toto,* and remanded.

Were we persuaded that the prosecutor had acted in bad faith in his pursuit of the ploy of concealment of Febee's identity, we might not afford this opportunity to present the missing witness. (See *People v Havelka,* 45 NY2d 636, 642-643.) The difficulty is that the court's erroneous ruling on the request to reopen the *Wade* hearing precluded the immediately available cure of holding the hearing then and there. A test of the prosecutor's good faith will be whether he produces Febee at the hearing we now order.

Accordingly, the judgments of conviction, Supreme Court, New York County (HAFT, J.), rendered May 12, 1978 of defendant-appellant Boutureira of conspiracy, third degree, of assault, first degree, of assault, second degree (two counts), and of riot, first degree, and of defendants-appellants Chiapetti and McLamb of manslaughter, first degree, of conspiracy, second degree, of assault, first degree (two counts), of assault, second degree (two counts), and of riot, first degree, should be affirmed, and defendants-appellants Chiapetti and McLamb directed to surrender; and the judgment of conviction, same court and Justice, rendered June 28, 1978 of defendant-appellant Sanchez of manslaughter, first degree, of conspiracy, second degree, of assault, first degree (two counts), of assault, second degree (two counts), and of riot, first degree, should be affirmed, and defendant-appellant Sanchez directed to surrender, and the appeals from judgments of conviction, same court and Justice, rendered May 12, 1978 of defendants-appellants Andriani and Doyle should be held in abeyance and the

---

* We are certainly not unaware that the hearing ordered in *People v Martin (supra)* was never held because the witness had disappeared and that the case was decided solely on examination of the trial testimony (38 AD2d 536, affd 32 NY2d 771). But we need not cross that bridge at this juncture.

matter remitted as a matter of discretion in the interest of justice to Supreme Court, New York County, for the reopening and continuance of the pretrial hearing on the subject of identification of defendants-appellants Andriani and Doyle by the witness Febee, to make new findings of fact and conclusions of law, and a new determination.

SANDLER, J. (dissenting as to defendant Doyle). I am in agreement with the opinion of the court except with regard to the conclusion that the evidence was legally sufficient to sustain Doyle's conviction on varied counts.

The case against Doyle rests entirely upon his identification by a single witness Febee. As the court's opinion suggests, such testimony is normally sufficient to raise a factual question to be determined by the jury. However, the principle has been also long established that evidence may be sufficient to make out a prima facie case and yet fail to be legally sufficient to establish guilt beyond a reasonable doubt. (See *People v Ledwon,* 153 NY 10, 17-18; *People v Seppi,* 221 NY 62, 68.) This seems to me such a case.

As the court's opinion notes Febee had only a "split second" opportunity to observe the person whom he identified as Doyle. The circumstances of this observation could hardly have been less conducive to accuracy. The witness was running down a ramp in flight from threatening conduct by others when the group of which Doyle was allegedly one ran towards him and by him.

I do not question the jury's implicit determination that Febee was a reliable witness, notwithstanding his acknowledgment that he had been intermittently "high" on marihuana during the hours preceding the critical events. Indeed, an examination of the record persuades me that this jury in general approached its difficult task in an exemplary manner.

Nonetheless, accepting Febee as a reliable witness, and assuming that his powers of observation were greater than those of the average person, as I am inclined to believe, there is inherent in the circumstances of the observation an unusual potential for error that cannot be disregarded. The possibility of error here is simply too substantial to support the conclusion that Doyle's guilt was proved beyond a reasonable doubt.

SILVERMAN, J. P., and FEIN, J., concur with MARKEWICH, J.; SANDLER, J., dissents as to defendant Doyle in an opinion.

Judgments, Supreme Court, New York County, rendered on May 12, 1978, with respect to defendants Boutureira, Chiapetti and McLamb, unanimously affirmed and defendants Chiapetti and McLamb directed to surrender; judgment of same court and Justice, rendered on June 28, 1978, with respect to defendant Sanchez, unanimously affirmed and defendant Sanchez directed to surrender; appeals from judgments of same court and Justice, rendered on May 12, 1978, with respect to defendants Andriani and Doyle, held in abeyance and the matter remitted as a matter of discretion in the interest of justice to the Supreme Court, New York County, for the reopening and continuance of the pretrial hearing on the subject of identification of defendants Andriani and Doyle by the witness Febee, to make new findings of fact and conclusions of law, and a new determination.