## (March 11, 1980)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JESUS FUENTES, Appellant.—Judgment of the Supreme Court, New York County, rendered March 28, 1977 convicting defendant of robbery in the first degree and two counts of robbery in the second degree, and sentencing him to concurrent terms of imprisonment, affirmed. The sole point of difference between us and our dissenting brother arises from the refusal of the Trial Judge to reopen the *Wade* hearing during the course of the trial. Leun Wong was robbed on Market Street in the evening hours of June 4, 1976 by two persons described as Hispanics. Shek Ying witnessed the crime. Ming Lok Wong and Sik Man Chu, two auxiliary policemen who were on duty nearby, pursued the robbers. At Pike and Cherry Streets the culprits split up. Ultimately, one, the defendant, was apprehended by Housing Authority

Police Officer Frank Ogaard. Defendant was taken to the housing precinct and Ming was dispatched to bring Leun and Shek to the police station. There, both identified defendant as one of the robbers. A combined suppression and *Wade* hearing was held on October 26, 1976 at which Ming, Sik, Henry Lee, another auxiliary policemen and Ogaard testified. Neither Leun nor Shek was called either by the prosecution or the defendant. At the conclusion of the hearing both of defendant's applications were denied. On this appeal defendant raises no question with respect to the suppression motion. During the trial defendant moved to reopen the *Wade* hearing contending that he had never examined Leun and, accordingly, there had never been a judicial determination of this capacity to make an untainted identification. The trial court denied the motion. This, it is contended by defendant, was error. A criminal trial is not a piecemeal proceeding to be interrupted for little or no reason. It ought not be suspended so that counsel may conduct discovery. Orderly procedure requires that specific rules be followed. Here, defendant had the right to inquire into the manner in which the prosecution intended to tie him into the robbery. He exercised that right. Had he desired he could have had both Leun and Shek produced at the *Wade* hearing. Whether the reasons which prompted his failure to compel their production were strategic or otherwise we cannot say. In any event, he elected not to seek their testimony. Having chosen to proceed as he did, he was no longer at liberty to renew the application at the trial absent some special or compelling circumstance. Since no such showing was made, or indeed, claimed, the refusal of the trial court to permit a reopening of the *Wade* hearing during the course of the trial did not constitute an abuse of discretion. Concur—Birns, Markewich and Bloom, JJ.

Murphy, P. J., dissents in a memorandum as follows: A *Wade* hearing consists of a two-step process that has been concisely described in *Jackson v Fogg* (465 F Supp 177, 184, affd 589 F2d 108): "In deciding whether or not to permit a witness to make an in-court identification, a two-step process must be employed. The court must determine whether the pre-trial identification procedures employed were in fact suggestive. If it determines that those procedures were suggestive, the court must then determine whether the identification to be made at trial was so tainted by the suggestive procedures as to be rendered unreliable, and therefore inadmissible. At this second stage, the court must evaluate the 'totality of the circumstances' in light of five distinct factors—'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation,' *Neil v. Biggers, supra,* 409 U.S. at 199-200, 93 S.Ct. at 382, and determine whether there exists 'a very substantial likelihood of misidentification.' *Id.* at 198, 93 S.Ct. at 381, *quoting Simmons, supra,* 390 U.S. at 384, 88 S.Ct. 967." With regard to the second step, the Court of Appeals has stated that, once it has been established that there has been a suggestive showing, the prosecution has the burden of showing by "clear and convincing" evidence that the in-court identification has not been tainted *(People v Rahming,* 26 NY2d 411, 417). However, it is not clear from case law whether the prosecution or the defendant has the burden of proof in the first step. I would find that the defendant must be required, in the first instance, to come forward with some proof that tends to show that the pretrial identification procedure was unnecessarily suggestive. Thereafter, I would require the prosecution to go forward to show that a particular identification was made within constitutional parameters. At the *Wade*

hearing in this proceeding, the prosecution called two auxiliary policemen and one Housing Authority policeman. These three witnesses described the events surrounding the pursuit and capture of the defendant. They also recounted the fact that Leun Wong, the victim, and Shek Ying, a passerby, identified the defendant in a Housing Authority record room 15 minutes after the occurrence. Neither Wong nor Ying was called by the prosecution. Therefore, the hearing transcript is silent as to their opportunity and ability to observe the defendant at the time of the robbery. The Hearing Judge upheld the validity of the pretrial identification because it was made shortly after the occurrence. The testimony of the prosecution's witnesses confirmed the fact that a showup had taken place in the record room. Since a showup, by definition, is inherently suggestive, the prosecution's witnesses made a prima facie case tending to show impropriety at the identification. Thus, it was unnecessary for the defendant to call any witnesses or adduce any other evidence to satisfy his burden of proof at the hearing. On the other hand, it was necessary for the prosecutor to go forward to show that the identification procedure was reliable under the criteria set forth in *Manson v Brathwaite* (432 US 98). It should be emphasized that the reliability of the identification made by the victim and passerby was crucial to defendant's conviction because the auxiliary policemen had lost sight of the defendant for a short period of time. As a general rule, the practice of exhibiting a suspect to a witness for identification without benefit of a lineup, absent exigent circumstances, has been condemned as violative of due process. However, a showup identification is not per se improper and may be sustained where the witness is shown the suspect within a relatively short time after the incident *(People v Brnja,* 70 AD2d 17, 23; *People v Smith,* 38 NY2d 882). In order to sustain the validity of an on-the-scene identification, it must be demonstrated, *inter alia,* that the witness had an ample opportunity to observe the defendant *(People v Dow,* 34 AD2d 224, 227, affd 28 NY2d 860). In the context of this case, I would find that the prosecution had the burden of establishing that element, as part of its case. As was mentioned above, the transcript of the *Wade* hearing does not contain any evidence bearing upon the opportunity or ability of the victim and passerby to recognize the defendant. This deficiency in proof undercuts the prosecution's rather than the defendant's case. Therefore, the silence of defense counsel at the *Wade* hearing is not the controlling consideration in this proceeding. In the early stages of the trial, the testimony from the victim and passerby raised serious doubts as to the adequacy of the *Wade* hearing. Wong stated that he had not seen the defendant's face during the robbery. He could not identify the defendant at trial. He further stated that he had identified the defendant in the record room by his blue shirt. Wong noted that, prior to the identification, an auxiliary policeman had informed him that the perpetrators had been apprehended. He also averred that his identification was made simultaneously with Ying's identification. Although Ying identified the defendant at trial, he testified that he had only seen two thirds of the defendant's profile for a period of approximately three seconds at the time of the robbery. There was other testimony at the hearing and trial to suggest that defendant was alone in the record room and handcuffed to a chair when the dual identification was made. The testimony of the victim and passerby developed at trial raised new and critical questions as to their ability to identify the defendant at either the hearing or the trial. Although the Hearing Judge had denied the original motion to suppress, the testimony at trial not only permitted the Trial Judge to reopen the hearing but required him to do so. In different factual settings, we have remanded

matters for new and more complete hearings where, through some fault of the prosecution, the original hearing was inadequate. *(People v Andriani,* 67 AD2d 20, 24; *People v Buie,* 66 AD2d 689; *People v Martin,* 35 AD2d 786.) Similarly, I would hold this appeal in abeyance and, as a matter of law, remand this matter for a new and more complete *Wade* hearing.