OPINION OF THE COURT
Nicholas A. Clemente, J.
The defendants were indicted on six counts of murder in the second degree and one count of arson in the second degree. The People maintain that on February 7,1980 the defendants set fire to premises located at 695 Sackett Street, Brooklyn, New York, in an attempt to burn out one Hannah Quick. A consequential result was that six people, residing in another apartment, died.
Defendants move (a) to suppress various statements obtained from them at the time of their arrest, and (b) to suppress the identifications of them by Hannah Quick.
*748 The People have the burden of showing, beyond a reasonable doubt, that the statements were voluntarily uttered (People v Thasa, 32 NY2d 712; People v Pobliner, 32 NY2d 356, 367-368; People v Huntley, 15 NY2d 72, 78; People v Winship, 78 AD2d 514).
As to the pretrial identification, the People must show by clear and convincing evidence that any in-court identification made of a defendant has an independent source and is not tainted by a suggestive identification procedure (see People v Vereen, 45 NY2d 856; People v Ramos, 42 NY2d 834; People v Ballott, 20 NY2d 600, 606). Where the People demonstrate, however, that the viewing of the defendant is for the confirmation of the arrest of a person known to the witness, rather than to identify an unknown individual who was observed committing a crime, then the usual identification rules may not appertain (see People v Morales, 37 NY2d 262; People v Cannon, 97 Misc 2d 762).
At a pretrial suppression hearing commenced on July 31, 1981 Detective Ralph Gorman and Hannah Quick testified for the People. Detective John Walker was called to the stand by Raymond Mora who also testified in his own behalf.
FINDINGS OF FACT
During the early morning hours of February 7, 1980 a fire occurred at 695 Sackett Street, a building in which Hannah Quick resided. Six children perished in the blaze. Detective Ralph Gorman was assigned to investigate the fire and responded to the scene. While there, Gorman was given the nickname of a suspect, Marty, and informed where he lived. Gorman went to pick up Marty. When he arrived at Marty’s house, Gorman asked him if he was Marty, to which the latter responded affirmatively. Gorman then drove him to an area on Fifth Avenue that was near Sackett Street. At that location, Hannah Quick and a fire marshal were seated in another car. Gorman asked Marty to get out of the car. Marty complied with the request whereupon Gorman received a prearranged signal from the fire marshal to indicate that the right Marty was being detained. Gorman then spoke to Quick who told him that this person was one of the individuals in the building *749 at the time of the fire. Accordingly, Marty was taken to the 78th Precinct. At the precinct, at approximately 4:00 a.m., Quick informed Gorman that immediately before the fire three individuals had been in the subject premises; Marty who was already in custody, as well as Flako and Chino. She stated that she had known these individuals for two years before the fire. For the eight- to nine-month period before the fire, they would come to her apartment (which she characterized as a “shooting gallery”) as much as three or four times a day to inject drugs.
Subsequent to Gorman completing his conversation with Quick, he questioned Marty, asking him his name and again his nickname. Gorman learned that Marty’s name was Amaury Villalobos. Gorman then gave him his Miranda rights, which he waived. Villalobos admitted having been at the subject premises a month earlier and to knowing Chino and Flako. Thereafter, he gave a statement to an Assistant District Attorney (ADA).
Later that morning, Detective John Walker picked up Flako and Chino. He knew neither of them before picking them up. Flako identified himself as Raymond Mora and Chino as William Vasquez. Walker brought the two to the 68th Precinct where they were identified by Hannah Quick. Gorman then commenced questioning them, inter alia, asking Mora for his nickname after which he gave him his Miranda warnings. According to Mora he asserted his right to counsel and pointed out to Walker that he had been in court on the previous day on other charges. According to Gorman, Mora waived his rights conceding that he had been at the scene of the fire the day before and that Quick had accused him of taking her son’s jacket. A transcribed statement of an ADA questioning Mora indicated that the questioning was abruptly terminated when Mora demanded that his lawyer be present.
At 1:05 p.m., on February 7, Gorman asked Vasquez for his name and nickname. Vasqqez answered these questions. Gorman then gave him his Miranda rights which he waived. Vasquez thereupon made a statement which implicated Mora and placed himself in the vicinity of the fire. Vasquez also gave a statement to an ADA.
*750 CONCLUSIONS OF LAW
In regard to defendants’ motions to suppress their statements the first issue presented is to what extent may the police question a defendant prior to giving Miranda warnings.
“Asking a suspect for his name and address is neither intended nor likely to elicit information of a criminal nature. The police are certainly entitled to make a reasonable inquiry as to the identity of the person they have taken into custody without the necessity of formal warnings.” (People v Rivera, 26 NY2d 304, 309.) Pedigree statements made to the police for identification purposes are admissible without Miranda warnings. (United States v Menichino, 497 F2d 935; Farley v United States, 381 F2d 357, cert den 389 US 942; People v Ryff, 27 NY2d 707; People v Jones, 84 Misc 2d 737, 739.) The determinative factor is whether the information sought is material to guilt or innocence. When the information sought seeks to uncover facts of criminal activity or to establish criminal responsibility, then such questioning should not be permitted under the guise of “pedigree”.
It, therefore, follows that the questioning of the defendants as to their nicknames is permissible in several instances herein and proscribed in others.
When Gorman went to the home of Villalobos, Gorman sought to ascertain if the person answering the door was, in fact, Marty. The purpose of any question in that regard was therefore for identification purposes. Villalobos’ statement that he was Marty is properly admissible despite not being preceded by Miranda warnings. At the precinct, later, when Gorman again asked Villalobos without benefit of Miranda warnings, for his nickname, it is apparent that Gorman’s intent in asking such question was to establish criminal responsibility in conjunction with Quick’s statement that the arsonists were Marty, Flako and Chino. Therefore, that question should be suppressed.
Similarly, for Mora and Vasquez, when Gorman asked them for their nicknames, he already had that information from Walker. The questions were not merely for identification purposes but for inculpatory aims and should have *751 been preceded by Miranda warnings. Mora’s statement to Walker that his nickname was Flako and Vasquez’ statement to Walker that his nickname was Chino are both admissible. Walker, as with Gorman at the Villalobos home, in eliciting that information merely sought to ascertain whether he was arresting the people who were the subject of the complaint of Hannah Quick.
As to any other statements made by Vasquez and Villalobos, they are admissible since the record shows, beyond a reasonable doubt that their statements were voluntarily, understandingly and intelligently made. Not so, however, Mora. There is evidence that Mora requested counsel. The People have not established beyond a reasonable doubt that he waived his right to counsel. Therefore, his statements (other than his statement to Walker that he was Flako) must be suppressed.
In regard to defendants’ motions to suppress the identifications of them by Hannah Quick, it is clear that such identifications are not those contemplated by CPL article 710 because the circumstances herein indicate that it would be impossible to taint Hannah Quick’s observations by any suggestively improper procedure.
Hannah Quick told the police that persons she knew only as Marty, Flako and Chino were involved in the arson. These were individuals that she knew intimately over an extended period of time. When these individuals were exhibited to Quick, it was merely to confirm that the people she knew as Marty, Flako and Chino had been arrested. Accordingly, there was nothing suggestive about Quick viewing the defendants without a lineup (cf. People v Morales, 37 NY2d 262, supra; People v Cannon, 97 Misc 2d 762, supra). Further, there is no doubt that any in-court identification Quick makes in this case has an independent source and would not be contaminated by her viewing Villalobos on the street near the scene of the crime or Mora and Vasquez in the station house.
Accordingly, defendants’ motions to suppress their identification by Hannah Quick is denied.