OPINION OF THE COURT
Rena K. Uviller, J.
This motion to suppress identification testimony poses the vexing and recurrent question of whether the People’s bare assertion that the identifying witness knew the defendant before the crime is a sufficient basis for denying the defendant a Wade hearing (388 US 218). Also at issue is the significance, if any, of the fact that the witness viewed the defendant photographically rather than corporeally in deciding whether a hearing is warranted.
The defendant was indicted for murder in the second degree. The People alleged that on a summer night on 8th Street and Avenue D, in New York County, he shot the deceased five times at close range in a dispute over drugs.
The People did not serve notice, pursuant to CPL 710.30, of intent to introduce testimony at trial of any pretrial identification of the defendant. But in their voluntary *478 disclosure form they did state that unnamed witnesses to the crime, who knew the defendant beforehand, had been shown a photo array or a single photo of the defendant in order to confirm that defendant was the perpetrator.
Defendant made a motion in the Calendar Part to suppress the witnesses’ trial testimony, claiming that “on information and belief, said testimony may be tainted and constitutionally inadmissible because of improperly suggestive pretrial procedures.” The People countered that because “the photographic identifications cannot be used at trial * * * [t]he People oppose a Wade hearing on these allegations.” The People further urged that in the event a hearing was ordered, they not be required to produce the identifying witnesses. The calendar Judge simply directed that a hearing be held regarding “the viewing of a photo array.”
At that hearing before me the detective in charge of the investigation testified that within a few weeks of the slaying he located four eyewitnesses, identified at the hearing by number only. Witnesses one and two had known the defendant for four and five years, respectively, had seen him frequently, and knew him by his nickname of “Shorty Wop”. Witness four had known the defendant since she had begun frequenting the neighborhood (about two weeks before the crime), had seen him on several occasions and also knew him as “Shorty Wop”. Witness three did not know the perpetrator’s name but had seen him many times in that area and gave a complete physical description of him.
The detective further attested that the two witnesses who had known the defendant for years were separately shown a single photo of him and asked whether they recognized it. Each confirmed that it was of “Shorty Wop”. Witnesses three and four were each separately shown a photo array. The latter identified the defendant’s photo as being that of “Shorty Wop” and the former selected the defendant’s photo as the person she had seen shoot the deceased. In addition, two of these witnesses (one and four) had each reviewed more than 200 photos before looking at the defendant’s photo and had recognized nobody from among those 200 photos.
*479 In support of the request that the witnesses not be required to come forward before the trial, the People adduced that in the year preceding this murder there had been 42 homicides in that particular precinct and that 34 of them were drug related. In the year before that, there were 38 homicides of which 75% were drug related. Finally, it was adduced that two years before this murder the 16-year-old defendant had been arrested for an armed robbery within the same precinct; the following year he was arrested for a robbery at 8th Street and Avenue D — the precise location of the instant murder — in which two victims had been shot. As a consequence, the defendant had been committed to a youth detention facility from which he had escaped when the instant homicide occurred.
After the officer’s testimony, this court ruled that the People had met their burden of demonstrating that the defendant had not been the subject of a pretrial identification procedure, suggestive or otherwise. The defendant’s request that the witnesses’ names be revealed to him and that he be permitted to call them as his own witnesses at the hearing was denied.
I. SIGNIFICANCE OF A PHOTOGRAPHIC VIEWING IN GRANTING A WADE HEARING
The fact that the witnesses viewed the defendant from a photo or photo array, rather than corporeally, in no way diminishes his right to challenge the suggestibility of the viewing. The People resisted a pretrial suppression hearing on the theory that because they are not permitted to introduce evidence of a photographic identification at trial (People v Griffin, 29 NY2d 91; People v Caserta, 19 NY2d 18), there is no need to test the fairness of the identification procedure at a pretrial hearing.
That assertion fails to perceive the dual purpose of a so-called Wade hearing. The function of the hearing is not only to test the fairness of the pretrial identification procedure in order to determine whether there may be trial testimony of the procedure itself. The hearing also resolves whether — if the pretrial identification was unfair — the witness has an independent basis for testifying at trial that the defendant is the perpetrator.
*480 The risk of a trial misidentification where the witness has seen the defendant corporeally in a suggestive pretrial setting is well recognized. (United States v Wade, 388 US 218; Wall, Eye-Witness Identification in Criminal Cases [1965].) The risk of erroneous trial identification is at least as great where the witness has been shown the defendant’s photograph in a suggestive manner. (Simmons v United States, 390 US 377; People v Bryant, 39 AD2d 80, affd 31 NY2d 744.) In the typical police investigation where a witness is shown numerous “mug” shots, the defendant will have no claim of suggestiveness. But if the witness has been shown but a single photo or a highly suggestive array, the defendant must have an opportunity to challenge the witness’ ability to identify him free of that suggestive photo identification. Thus, even where the procedure itself is per se inadmissible, as in the case of a photo identification, the fairness of the identification procedure must be established in any event.
Significantly, the statute describing identification testimony that is subject to suppression due to an “improperly made previous identification of the defendant” (CPL 710.20, subd 5), does not confine that improper “previous identification” to a corporeal one. Indeed, although there is some dispute as to the People’s obligation to notify the defendant that he has been identified from photos (CPL 710.30), the better practice is to give such notice. (Cf. People v Abraham, 74 Misc 2d 544; People v Slater, 53 AD2d 41.)
In any event, there is nothing to prevent the defendant from learning through discovery that he has been the subject of a photographic selection (CPL 240.10 et seq.; People v Abraham, supra). Once he learns of it, he must have an opportunity to challenge its fairness. Thus, the fact that the viewing was from a photo of the defendant rather than his person is, of itself, irrelevant in determining whether a hearing is required.
II. SIGNIFICANCE OF THE WITNESS’ PRIOR FAMILIARITY WITH THE DEFENDANT
The real inquiry is whether the viewing of the defendant was an “identification” at all. Where the defendant is *481 known to and is a familiar figure to the witness before the crime, there is virtually no danger of a trial misidentification owing to a pretrial viewing, whether corporeal or by photo. Where the witness — either the victim or some other eyewitness — knows the defendant, suggestiveness is irrelevant (People v Tas, 51 NY2d 915; People v Gissendanner, 48 NY2d 543).
In cases of prior familiarity, the due process concern for avoidance of trial misidentification does not require a hearing to probe either suggestiveness or taint. In a word, a viewing of the defendant, either corporeally or by photo, by a witness who knew him anyway is not an “identification” at all. Such a viewing is merely a recognition — a confirmation that the person whom the witness saw commit the crime is the same person the police intend to arrest (People v Tas, supra; People v Gissendanner, supra).
Characterizing such a viewing as a “nonidentification” or as a “recognition” or “confirmation” is not, however, dispositive of the defendant’s right to a hearing (see People v Collins, 84 AD2d 35). Suppose the defendant denies that he knows the witness. Or suppose, as here, that the defendant does not know who the identifying witnesses are. Must there be a pretrial hearing to determine whether or not the witnesses really do know him? Thus, the crux of the issue posed by this and similar cases arising with regularity in our courts is as follows: Is the prosecutor’s bare assertion that the witness knew the defendant sufficient to characterize the viewing as a “nonidentification”, thereby dispensing with the need for a hearing to probe suggestiveness and/or taint? Or must the People’s assertion of prior familiarity itself be tested at a hearing before trial?
In this case, the defendant was not in a position to challenge the claim that the witnesses knew him because their identities were not revealed to him. The witnesses all testified in the Grand Jury, however, and those minutes confirm their prior familiarity with the defendant. In turn, the officer’s testimony at the hearing (which this court was somewhat constrained to conduct as a consequence of the calendar Judge’s order) merely confirmed the witnesses’ Grand Jury testimony and elaborated a bit on the nature of their familiarity with the defendant.
*482 Similarly, in People v Cannon (97 Misc 2d 762) the 73-year-old victim, who had been beaten, locked in her bathroom and robbed of $100, told the police that her assailant was “Rudy”, whom she had known for years; he was the building superintendent’s grandson and she had baby-sat for his child. After the crime she was shown a single photo which she confirmed was of Rudy. Notwithstanding prior familiarity with her assailant, a pretrial Wade hearing was held to establish and challenge that familiarity.
In cases such as this and Cannon (supra), was a hearing before trial required at all? To answer that question two interests must be balanced. A paramount concern is fairness to the accused. For if it emerges that, contrary to the prosecutor’s assertion, the witness did not in fact know the defendant, the defendant must be safeguarded against a trial identification that was, in reality, based upon a suggestive pretrial viewing.
A classic example is the local merchant who, the People assert, knows the robber as a previous customer and was shown the defendant’s photo merely as confirmation. It turns out, however, that the merchant-witness was only dimly familiar with the defendant from a single and vague previous encounter. In such a situation, the suggestiveness of a pretrial viewing, whether corporeal or from photos, must be determined before the jury hears the merchant’s damning identification testimony.
Of comparable concern, however, is the increasing number of pretrial hearings which are encrusting our justice system like barnacles on a ship’s hull.* The proliferation of pretrial proceedings has rendered the ultimate adjudication of guilt or innocence distressingly remote, and the delay has created a profound cynicism about the ability of our justice system to function at all.
The Criminal Procedure Law provides that once a hearing is granted on a pretrial motion to suppress, the defendant is entitled to a decision on the motion before the trial commences (CPL 710.40, subd 3). This requirement of a *483 ruling before trial involves, perforce, a separate appearance by witnesses for purposes of the hearing. Where only police witnesses are involved, for example, in motions to suppress physical evidence or confessions, multiple appearances are a marginal concern. But where civilians are involved, as is usually the case in a Wade hearing, the proliferation of appearances has a most distressing consequence: the reluctance of those whose lives have been scarred by crime to come forward at all. This reluctance is exacerbated where the witness has a basis for fearing a defendant with a history of violence.
Was it necessary for the 73-year-old victim in Cannon (97 Misc 2d 762, supra) — who had known her tormentor for years — to appear not only in the Grand Jury and at the trial, but at a wholly separate hearing as well, in order to demonstrate that she really did know Rudy? In this case, the officer’s appearance at the hearing in order to confirm what the Grand Jury minutes already demonstrated (i.e., that the witnesses all knew the defendant), is part of his job. But must those witnesses, as the defendant claims is his due, also make a separate appearance so that their familiarity with the defendant may be challenged?
These people allegedly witnessed an execution-style slaying in a neighborhood glutted by violence. The defendant’s right to confront and challenge his accusers, which will be vindicated at trial, does not include the right to wear them down or inhibit them from testifying. Nor ought the defendant’s need for a pretrial Wade hearing in the proper case be converted into a means of discovering who the witnesses are in every case.
In many cases, the prosecutor is well advised to disclose the witness’ identity to the defendant before the trial; the court may order such disclosure in order to avoid surprise and expedite a just result (People v Barnes, 74 Misc 2d 743; People v Harrison, 81 Misc 2d 144). Yet the identity of prosecution witnesses is not available to the defense as a matter of course (CPL 240.10 et seq.; Matter of Vergari v Kendall, 76 Misc 2d 848, app dsmd 46 AD2d 679; People v Spencer, 79 Misc 2d 72). In recognition of the very real concern for the safety of witnesses, discovery in criminal cases has traditionally been more restrictive than in civil *484 cases (see United States v Tolliver, 569 F2d 724). Here, the prosecutor’s concern for his witnesses and his reluctance to reveal their identity prematurely is not without foundation. Unless there is a valid due process consideration warranting it, the People should not be made to disclose their identity at this juncture (see People v Andriani, 67 AD2d 20, 73 AD2d 864). Moreover, a spurious Wade hearing must not be the means by which the defendant learns that to which discovery does not entitle him.
There is a way of reconciling this conflict between a defendant’s need to probe the witness’ alleged familiarity with him on the one hand and, on the other, to protect witnesses and avoid wearing them down by unnecessary trips to the courthouse. When the People claim that no identification issue exists because of prior familiarity, some support for their assertion should be required by the court. This may be satisfied by submission either of Grand Jury minutes attesting to prior familiarity or, if the witness has not testified in the Grand Jury, by an affidavit from the witness confirming his familiarity with the defendant.
Where the witness’ identity must remain concealed until the trial, the submission may be in camera. If the court is thereby satisfied that the prosecutor’s claim of prior familiarity is in good faith, no pretrial hearing at all should be granted. In such a case, that is, upon denial of a hearing, the defendant should nonetheless be permitted at trial to examine the witness in the jury’s absence regarding prior knowledge. If it emerges that, despite the Grand Jury minutes or the witness’ affidavit, the witness’ familiarity with the defendant is scant, then the suggestiveness of a pretrial viewing and taint may be explored before the jury hears the identification testimony.
In this way the defendant’s right to a fair trial and the avoidance of trial misidentification is reconciled with the public interest in the safety of witnesses and the efficient adjudication of criminal cases. The number of jury trials subjected to prolonged interruption because of a witness’ extended voir dire will be minimal compared to the obstruction and delay now created by the spurious invocation and granting of pretrial hearings.
*485 In this case, where the Grand Jury minutes attest to the various witnesses’ prior familiarity with the defendant, no pretrial hearing at all was required. Even the officer’s testimony was unnecessary, although it did confirm that the witnesses all knew the defendant before hand. Certainly the witnesses themselves need not appear at this juncture. (See People v Andriani, 67 AD2d 20, 73 AD2d 864, supra.) When they do appear at the trial, however, the defendant shall be given an opportunity to examine them out of the jury’s presence. If the Trial Judge then determines that, contrary to their Grand Jury testimony, they did not know the defendant, or knew him but vaguely or uncertainly, the question of any suggestiveness in the viewing of photos and possible taint may be explored.
Accordingly, the motion to suppress the testimony of identifying witnesses is denied, with leave to renew during trial upon a proper showing after defendant has had an opportunity to examine the witnesses in the jury’s absence.

 E.g., Alfinito hearing (People v Alfinito, 16 NY2d 181); Cardona hearing (People v Cardona, 41 NY2d 333); Darden hearing (People v Darden, 34 NY2d 177); Dunaway hearing (People v Dunaway, 442 US 200); Huntley hearing (People v Huntley, 15 NY2d 72); Mapp hearing (People v Mapp, 367 US 643); Sandoval hearing (People v Sandoval, 34 NY2d 371); Wade hearing (United States v Wade, 388 US 218).