STATE OF CONNECTICUT *v.* DAVID HUCKABY
(AC 16462)

O'Connell, C. J., and Dupont and Shea, Js.

Argued November 3, 1997—officially released January 27, 1998

*David B. Rozwaski*, special public defender, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Marcia Smith*, former supervisory assistant state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, C. J. The defendant appeals[1] from his conviction, following a jury trial, of burglary in the third

---

[1] The defendant did not initially file a timely appeal after his trial, which was held in April, 1985. In 1987, he filed a habeas corpus petition claiming that his counsel was ineffective for failing to perfect his appellate rights. On August 28, 1996, the habeas court granted the defendant's petition and reinstated the defendant's right to appeal. See *State* v. *Phidd*, 42 Conn. App. 17, 27, 681 A.2d 310, cert. denied, 238 Conn. 907, 679 A.2d 2 (1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1115, 137 L. Ed. 2d 315 (1997) (habeas court has authority to reinstate lapsed appellate rights).

degree in violation of General Statutes § 53a-103.[2] He claims that the trial court improperly concluded that his statements to the police (1) did not violate his *Miranda* rights; *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); and (2) were voluntary. We affirm the judgment of the trial court.

There was evidence from which the court, in making its evidentiary ruling, could have found the following facts. On December 9, 1984, Middlebury police officers Luther France and Patrick Bona were dispatched to the PIC Design building in response to a burglar alarm. The officers entered the building where they encountered the defendant who fled at the sight of them. During the chase, the officers observed that the defendant was carrying a revolver in his belt.

Once outside the building, the defendant stopped running and surrendered. France advised the defendant of his *Miranda* rights and the defendant acknowledged that he understood them. Bona then started to handcuff and disarm the defendant. The defendant resisted, and Bona struck him and forced him to the ground in an effort to immobilize him. After successfully disarming and handcuffing the defendant, Bona took him inside the building where they awaited a third officer who had been dispatched to the scene to transport the defendant to the police station. At that point, Bona again advised the defendant of his *Miranda* rights and asked him if he understood them, to which the defendant responded, "I know, I know."

Once inside the police cruiser, the defendant spontaneously initiated a conversation about the incident with

---

[2] Subsequent to his conviction of burglary in the third degree, the defendant pleaded guilty to part B of the information charging him with being a persistent serious felony offender by virtue of having been convicted of robbery with violence on April 14, 1967, and manslaughter on November 10, 1972.

Officer Stephen Ferrucci, the third police officer to arrive at the scene. Ferrucci stopped him from speaking and advised him of his rights, to which the defendant responded, "I know my rights." During their conversation, the defendant was calm, had "all his faculties about him" and did not request an attorney.

At the station, Ferrucci again advised the defendant of his *Miranda* rights, and the defendant refused to sign a waiver of rights form. Approximately five minutes later, France arrived at the police station and the defendant stated that he would speak only to him. During their conversation, which occurred about forty minutes after the arrest, the defendant neither requested an attorney nor indicated that he did not want to answer France's questions. The defendant appeared coherent, spoke and understood English and exhibited above average intelligence.

Approximately six hours after the defendant's arrest, Bona initiated a conversation with the defendant concerning the burglary. Again, the defendant spoke willingly, was coherent and did not request an attorney.

The defendant's motion to suppress the testimony of France and Bona was denied by the trial court. The court found the police officers credible and further found that the defendant had expressed a willingness to speak and chose words that constituted an affirmative act evidencing a knowing and voluntary waiver, despite his refusal to sign a waiver of rights form.

The trial court also found that the defendant's statements were made voluntarily. Specifically, the court stated that "[t]here's no exhibition of weakness of will or mind. The fact that [the defendant] and Officer Bona had some kind of confrontation while the cuffs were being placed does not warrant a finding of an involuntary statement because there's nothing in the evidence

concerning what happened at the station itself to indicate that the accused was in any way affected by what happened at the [scene]."

Additional relevant facts are included in the analyses of the individual claims.

I

The defendant contends that because his statements were made when he was in custody, they should not have been admitted into evidence without a knowing and voluntary waiver of his right to remain silent. *Miranda* v. *Arizona*, supra, 384 U.S. 444. It is undisputed that the defendant was in custody when he made the statements in question and that he refused to sign the waiver of rights form.

Pursuant to the fifth and fourteenth amendments to the United States constitution, "a statement made by a defendant during custodial interrogation is admissible only upon proof that he . . . waived his rights [under *Miranda*] to remain silent . . . ." *State* v. *Simms*, 201 Conn. 395, 411, 518 A.2d 35 (1986). " 'In order to show that the defendant waived his privilege against self-incrimination, the state must prove by a preponderance of the evidence that he knowingly and intelligently waived his constitutional right to remain silent.' " *State* v. *Toste*, 198 Conn. 573, 579, 504 A.2d 1036 (1986).

The reviewing court is required to make an independent judgment of whether the defendant made a valid waiver of his constitutional rights based on the totality of the circumstances. *Beckwith* v. *United States*, 425 U.S. 341, 348, 96 S. Ct. 1612, 48 L. Ed. 2d 1 (1976); *State* v. *Russo*, 3 Conn. App. 137, 146–47, 485 A.2d 1335 (1985). Deference to the trial court's findings of fact is limited by the requirement that we make "a scrupulous examination of the record to ascertain whether [the trial

court's] factual finding is supported by substantial evidence." *State* v. *Madera*, 210 Conn. 22, 49, 554 A.2d 263 (1989).

If the record does not show a defendant's express oral statement either that he wanted to rely on his rights and to remain silent or that he wanted to waive them, the state must demonstrate (1) that the defendant understood his rights and (2) that his course of conduct indicated that he did in fact waive them. *State* v. *Shifflett*, 199 Conn. 718, 731–32, 508 A.2d 748 (1986).

In the present case, the defendant was advised of his rights four times. Each time, the defendant expressly stated that he understood his rights. At no time did he ask for a lawyer or indicate that he would not answer the officers' questions. All three officers indicated that no threats or promises were made to the defendant in exchange for any statements.

The defendant was thirty-seven years old and appeared to possess above average intelligence. He was coherent, free from the influence of liquor or drugs, fully conversant in the English language and, when offered the use of a telephone, called his mother. He was provided with cigarettes and coffee and expressly told France that he would talk with him. He had prior experience with the police and the criminal justice system. Considering the defendant's expressed willingness to speak with the police and his course of conduct, we conclude that there was substantial evidence before the trial court to support the finding that the defendant understood his *Miranda* rights and that he knowingly and intelligently waived his right to be silent.

## II

The defendant also contends that his statements were not voluntarily made. The defendant's claim of involuntariness arises out of his altercation with Bona at the

time of his arrest. The defendant contends that he had become so agitated by Bona's actions that he inadvertently blurted out incriminating statements out of intimidation and in anger.

Despite our conclusion in part I that the admission of the defendant's statements did not violate the fifth amendment or his *Miranda* rights, they would nevertheless be inadmissible as a fourteenth amendment denial of due process of law if they were not voluntarily made. *State* v. *Shifflett*, supra, 199 Conn. 726–27. A statement is voluntary if it is "the product of an essentially free and unconstrained choice by its maker"; (internal quotation marks omitted.) *State* v. *Downey*, 45 Conn. App. 148, 162, 694 A.2d 1367, cert. denied, 242 Conn. 909, 697 A.2d 367 (1997); "[i]f it is, if he has willed to [make a statement], it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his [statement] offends due process." (Internal quotation marks omitted.) Id.

"The question of voluntariness is one of fact for determination by the trial court in the exercise of its discretion, subject to the constitutional standards of due process." *State* v. *Barrett*, 205 Conn. 437, 452, 534 A.2d 219 (1987). " 'The factors taken into account [on voluntariness] when assessing the totality of the circumstances include many of those used when determining the capacity of the defendant to waive his *Miranda* rights knowingly and intelligently.' " *State* v. *Madera*, supra, 210 Conn. 41. Among those factors are "the defendant's age, intelligence, and his experience with the criminal justice system . . . ." *State* v. *Shifflett*, supra, 199 Conn. 731.

In part I of this opinion, we concluded that the defendant was an adult with above average intelligence who had prior experience with the police and criminal justice system. The evidence further shows that the police

were respectful of the defendant's rights and no threats were used to elicit statements from the defendant. The trial court found, and we agree, that the minor altercation between the defendant and Bona did not produce an atmosphere of intimidation that would warrant a finding that the defendant's statements were involuntary. Bona's actions were not meant to elicit a confession, but simply to restrain the defendant and to prevent him from grabbing his gun. In fact, the defendant willingly made several incriminating statements while sitting in the police cruiser and then again at the police station, six hours after his arrest. It cannot be said that the incident with Bona in any way affected the voluntariness of any of the defendant's statements. The record reveals that the statements were the product of a free and deliberate choice.

The judgment is affirmed.

In this opinion the other judges concurred.