## STATE OF CONNECTICUT *v.*
## JOSEPH FERNANDEZ III
## (AC 18201)

Foti, Landau and Spear, Js.

Argued December 4, 1998—officially released April 6, 1999

*Lisa Steele,* special public defender, for the appellant (defendant).

*Richard F. Jacobson,* supervisory assistant state's attorney, with whom, on the brief, was *Jonathan Benedict,* state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. The defendant, Joseph Fernandez III, appeals from the judgment of conviction, rendered after a jury trial, of capital felony in violation of General Statutes § 53a-54b (8), two counts of murder in violation of General Statutes § 53a-54a (a) and commission of a class A, B, or C felony with a firearm in violation of General Statutes § 53-202k.[1] The defendant received a total effective sentence of life imprisonment without the possibility of parole. On appeal, the defendant claims that the trial court improperly failed to suppress his oral and written statements. In addition, the defendant asks this court (1) to exercise its general supervisory powers to require police officers to record all interrogations that take place at a police station or other place of detention and to apply retroactively that rule to this case and (2) to vacate his conviction under § 53-202k. We vacate the defendant's conviction under § 53-202k and affirm the judgment of the trial court in all other respects.

After a hearing on the motion to suppress, the trial court reasonably could have found the following facts. On the evening of April 28, 1995, James McMillian picked up Jato Jefferson in the car that McMillian used to deliver pizzas for a pizza establishment in Bridgeport. At that time, Erica McGilvary was sitting in the front passenger seat and the defendant was sitting in the backseat. As McMillian was making his final pizza delivery before going with the others to a party, the defendant pulled out a gun and shot both McMillian and McGilvary.[2]

---

[1] General Statutes § 53-202k provides in relevant part: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm . . . shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

[2] In his written statement, the defendant indicated that he shot McMillian because "[McMillian] threatened me." When asked what that meant, the

The following day, Detective Joseph Sherbo of the Bridgeport police department was informed that Jefferson, a witness to the double homicide, wanted to speak to him. Jefferson went to the police station that evening and in a written statement provided information regarding the events that transpired the previous night. Specifically, Jefferson indicated that he was present in the car when the defendant shot each victim in the head.

The police transported the defendant to the Bridgeport police station. Shortly after arriving at the station, the defendant made an oral inculpatory statement. After being advised of his *Miranda*[3] rights, the defendant made a written inculpatory statement. Prior to the commencement of trial, the defendant moved to suppress his statements. The trial court denied the motion, finding that the defendant had voluntarily accompanied the detectives to the police station and, therefore, was not in custody, that he had subsequently been informed of his *Miranda* rights, that he was aware that he was under arrest at that point and had voluntarily and intelligently waived his rights. At the conclusion of trial, the jury found the defendant guilty as charged. This appeal followed. Additional facts will be discussed where relevant to the issues in this appeal.

I

The defendant first claims that the trial court improperly failed to suppress both his oral and written statements because he did not validly waive his *Miranda* rights. Specifically, the defendant claims that the trial

___

defendant responded: "Something that happened a while back at [a] club . . . . I got jumped by some guys . . . . He left me, that's [McMillian]. When he got to school that Monday, he lied about that he did something to help me fight but he didn't. I told him that was messed." When asked why he killed McGilvary, the defendant replied, "I don't know." Jefferson testified that he was able to escape unharmed because the defendant "knew [his] family."

[3] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

court improperly (1) found that the defendant made a spontaneous oral statement and (2) concluded that the defendant intelligently and knowingly waived his *Miranda* rights. We disagree.

## A

The defendant claims that (1) the trial court improperly found that he spontaneously stated that he had killed the two victims before being read his *Miranda* rights and (2) he was in custody when he arrived at the police station and, therefore, the police were required to give him the *Miranda* warnings.

### 1

In his initial claim, the defendant specifically claims that the state was unable to prove that he made the inculpatory statement because three of the four people who could have heard it, himself and two of the detectives, denied that the defendant made the statement. The defendant asserts that, had he made the statement, the two detectives would certainly have recalled it. Essentially, the defendant does not claim that there is insufficient evidence in the record for the trial court's finding, but claims, instead, that the trial court improperly chose to disbelieve certain testimony.

" 'This court does not retry the case or evaluate the credibility of the witnesses.' " *State* v. *Taylor*, 23 Conn. App. 426, 429, 580 A.2d 1004 (1990). We are guided by the well established principle that "[i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . As such, the trial court is free to accept or reject, in whole or in part, the evidence presented by any witness, having the opportunity to observe the witnesses and gauge their credibility." (Citation omitted; internal quotation marks omitted.)

*State* v. *Sandra O.*, 51 Conn. App. 463, 468, 724 A.2d 1127 (1999).

The trial court had before it testimony that differed as to whether the defendant made the spontaneous inculpatory statement. Sherbo testified that the defendant made the oral statement when asked if he wanted to make any statement. Detective Hector Teixiera, who was present at that time, testified that he did not recall whether the defendant made any statements prior to being read his *Miranda* rights, but did not state that the defendant did not make any statement.[4] The defendant testified that after having been read his *Miranda* rights, Sherbo asked if he wanted to make a statement and he replied, "No." The defendant's claim is simply an attack on the credibility of Sherbo and is without merit.[5] It is the trial court's exclusive province as the trier of fact on a motion to suppress to assess the credibility of the witnesses and to accept or reject the evidence presented by each witness. Id.

2

The defendant asserts that the *Miranda* warnings were required at the time that he executed his written statement because he was in custody. The state argues that the defendant failed in his initial burden to show that he was in custody when he arrived at the police

[4] The defendant claims that Detective Robert Sapiro also testified that he could not recall whether the defendant made the inculpatory statement but incorrectly cites a portion of the transcript containing Teixiera's testimony. Our review of the portion of the transcript containing Sapiro's testimony, however, reveals that while he testified that he was in the interview room when the defendant was advised of his rights and signed the waiver, he "[did] not recall being in [the room] during the [defendant's] statement," referring to the defendant's *written* statement. The transcript, however, is devoid of any reference to the defendant's oral inculpatory statement.

[5] We note that in rendering its decision regarding the motion to suppress, the trial court commented: "To say that the testimony of the state's witnesses and the testimony of the defense witnesses conflicted would be, obviously, an understatement."

station and, therefore, the trial court's factual determination that the defendant was not in custody when he made the spontaneous oral statement was proper. In response, the defendant claims that under the facts of this case he met his burden of proving custodial interrogation because a reasonable person in his position would not have believed that he or she was free to leave after entering the interview room. We agree with the state.

The following facts are necessary for the proper resolution of this claim. Some time after 9:30 p.m. on April 29, Sherbo, accompanied by five plainclothes police officers, went to the home of the defendant's mother on Ridge Avenue in Bridgeport. Sherbo and three other detectives proceeded to the front door where they were met by the defendant's mother, while the other two detectives went to the rear of the apartment building. With the mother's permission, Sherbo and the others entered the living room to speak to her. While in the living room, Sherbo informed the defendant's mother that two people had been shot and that they wanted to speak to the defendant, if he was willing. Sherbo then asked the defendant, who was only five to seven feet away when he gave the explanation to the mother, if he wanted to talk to them. The defendant responded by nodding his head up and down. Sherbo then asked the defendant whether he wanted to go to the police station to talk to them. The defendant agreed, again nodding his head up and down. At no time did the police exhibit any weapons. The defendant was not handcuffed or otherwise restrained in any way when he left his mother's home.

Three detectives transported the defendant to the police station in an unmarked car equipped with a cage. At no point during the transport did any of the detectives question the defendant. Furthermore, during this time,

the defendant never indicated that he wanted an attorney or that he did not want to answer any questions.

At the station, when Sherbo asked the defendant if he wanted to give a statement regarding what happened, the defendant replied, "Yes." Immediately thereafter, with no further conversation, the defendant stated, "I shot him—I shot them." Sherbo told the defendant to "stop" and proceeded to read the defendant his *Miranda* rights. The defendant was neither promised anything nor threatened into making a statement, either in the police vehicle or at the police station.

"An individual is entitled to be advised of his *Miranda* rights prior to any 'custodial interrogation' in order to protect his privilege against self-incrimination and to ensure that all confessions used against him are knowingly and voluntarily made." *State* v. *Ledbetter*, 41 Conn. App. 391, 395, 676 A.2d 409 (1996), aff'd, 240 Conn. 317, 692 A.2d 713 (1997). "Two threshold conditions must be satisfied in order to invoke the [*Miranda*] warnings . . . (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation. *Miranda* v. *Arizona*, [supra, 384 U.S. 444]. . . . As stated by the United States Supreme Court in *California* v. *Beheler*, [463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983)], [a]lthough the circumstances of each case must certainly influence a determination of whether a suspect is in custody for purposes of receiving *Miranda* protection, the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. . . . Further, the United States Supreme Court has adopted an objective, reasonable person test for determining whether a defendant is in custody. . . . Thus, in determining whether *Miranda* rights are required, *the only relevant inquiry*

*is whether a reasonable person in the defendant's posi-
tion would believe that he or she was in police custody
of the degree associated with a formal arrest. . . .*

"In [*State* v. *DesLaurier*, 230 Conn. 572, 578, 646 A.2d
108 (1994)], our Supreme Court stated: The defendant
had the initial burden of proving custodial interrogation.
. . . The trial court's determination that the defendant
was not in custody is a finding of fact. . . . That finding
of fact by the trial court will not be overturned unless
it is clearly erroneous. . . . We will, however, carefully
review the record to ascertain whether the trial court's
finding is supported by substantial evidence." (Citations
omitted; emphasis in original; internal quotation marks
omitted.) *State* v. *Harris*, 46 Conn. App. 216, 225–26,
700 A.2d 1161, cert. denied, 243 Conn. 930, 701 A.2d
662 (1997).

After carefully reviewing the complete record, we
cannot find on its face any credible evidence that the
defendant was under arrest or that he was restricted
in any manner or form prior to making the oral state-
ment. The presence of the police at the front and rear
doors of the apartment building does not indicate that
the defendant was in custody as there was no showing
that he knew that the police were stationed at the rear
door. See *State* v. *James*, 237 Conn. 390, 409, 678 A.2d
1338 (1996). Sherbo testified that the defendant was
only a few feet away when he informed the defendant's
mother why they were at her home. Thereafter, when
Sherbo asked the defendant whether he wanted to
accompany the police to the station, the defendant nod-
ded in the affirmative. The defendant agreed to accom-
pany the police to the station and was transported there
without handcuffs. When Sherbo asked the defendant
whether he wanted to make a statement, the defendant
volunteered the inculpatory oral statement that he shot
the victims. See *State* v. *Northrop*, 213 Conn. 405, 415,
568 A.2d 439 (1990) (defendant not in custody every

time he is questioned at police station). Immediately thereafter, Sherbo stopped the defendant and advised him of his *Miranda* rights. The defendant was promised nothing, he was not threatened or coerced, nor were there any other characteristics of a formal arrest.

We are persuaded that the trial court's conclusion that the defendant was not in custody and voluntarily accompanied the police to the station was not clearly erroneous. We conclude, therefore, on the basis of our review of the record, that there was substantial evidence to support the trial court's determination that the defendant was not in custody but, rather, voluntarily agreed to accompany the police to the station for further questioning. Absent police custody, *Miranda* warnings are not dictated. *Miranda* v. *Arizona*, supra, 384 U.S. 444; *State* v. *Williams*, 227 Conn. 101, 112, 629 A.2d 402 (1993).[6]

## B

The defendant next claims that the trial court improperly concluded that he made a knowing and intelligent waiver of his *Miranda* rights. Specifically, the defendant claims that the waiver was invalid because of his age, limited education and limited experience with police procedures and his rights. As such, the written statement should have been suppressed as involuntary under the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut. We are not persuaded.[7]

---

[6] Because we conclude that the trial court's finding that the defendant was not in custody was not clearly erroneous, we need not address the defendant's claim that his oral statement should have been suppressed because he did not intelligently and knowingly waive his *Miranda* rights. Therefore, the only waiver issue addressed in this appeal is the waiver of his *Miranda* rights with respect to the defendant's written inculpatory statement. See part I B of this opinion.

[7] "Because the defendant did not advance a separate state constitutional argument, we will limit our analysis to federal constitutional grounds." *State*

The following additional facts are necessary for the resolution of this claim. Following the defendant's oral inculpatory statement, Sherbo read the defendant his rights from a *Miranda* warning card and gave the defendant a form that advised him of his rights and allowed him to effect a waiver. The defendant was eighteen years of age, had completed the tenth grade and was entering the eleventh grade, and read and spoke English. During the interview, the defendant filled in his biographical information on the waiver form. Sherbo read the *Miranda* warnings to the defendant, paragraph by paragraph, and he instructed the defendant to initial each right on the form as it was read to him, if he understood the right. The defendant initialed the form after each right was read to him.

After Sherbo read the waiver at the lower portion of the waiver form to the defendant, he asked the defendant whether he understood the waiver, whether he wanted to give a statement at that time and whether he wanted an attorney. The defendant replied that he had no questions and that he was willing to give a statement. Thereafter, the defendant signed the form, waiving his *Miranda* rights. During the time that the defendant was making the written statement, he did not request an attorney, refuse to answer any questions or request that the questioning cease.

There is no indication in the record that the defendant was under the influence of drugs or alcohol or was ill, injured or suffering any pain. In his written inculpatory statement, the defendant admitted that he shot both victims and that Jefferson was with him in the backseat of the vehicle. He also told the police where he threw the gun. The defendant read the statement and was given an opportunity to make corrections. The defendant, however, made no corrections to the statement

v. *Guess*, 39 Conn. App. 224, 231, 665 A.2d 126, cert. denied, 235 Conn. 924, 666 A.2d 1187 (1995).

and signed each page of the statement. While making the statement, the defendant was neither threatened nor were any promises made to him in return for making the statement.

"Pursuant to the fifth and fourteenth amendments to the United States constitution, a statement made by a defendant during custodial interrogation is admissible only upon proof that he . . . waived his rights [under *Miranda*] . . . ." (Internal quotation marks omitted.) *State* v. *Huckaby*, 47 Conn. App. 523, 527, 706 A.2d 16 (1998). "To be valid, a waiver must be voluntary, knowing and intelligent. *Miranda* v. *Arizona*, [supra, 384 U.S. 475] . . . . The state has the burden of proving by a preponderance of the evidence that the defendant voluntarily, knowingly and intelligently waived his *Miranda* rights. . . . Whether a purported waiver satisfies those requirements is a question of fact that depends on the circumstances of the particular case. . . . Although the issue is therefore ultimately factual, our usual deference to fact-finding by the trial court is qualified, on questions of this nature, by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence. . . .

"Whether the defendant has knowingly and intelligently waived his rights under *Miranda* depends in part on the competency of the defendant, or, in other words, on his ability to understand and act upon his constitutional rights. . . . Factors which may be considered by the trial court in determining whether an individual had the capacity to understand the warnings include the defendant's experience with the police and familiarity with the warnings . . . his level of intelligence, including his IQ . . . his age . . . his level of education . . . his vocabulary and ability to read and write in the language in which the warnings were given . . . intoxication . . . his emotional state . . . and the

existence of any mental disease, disorder or retardation." (Citation omitted; internal quotation marks omitted.) *State* v. *DaEria*, 51 Conn. App. 149, 165–66, 721 A.2d 539 (1998).

After a careful review of the record, we conclude that there is substantial evidence to support the trial court's finding that the defendant voluntarily and intelligently waived his *Miranda* rights. Although the defendant argues that the waiver was invalid because of his age and limited education, the defendant, who was eighteen years old at the time of the incident and had completed the tenth grade, testified that he knew how to read and write English. See, e.g., *State* v. *Usry*, 205 Conn. 298, 306, 533 A.2d 212 (1987) (valid waiver of *Miranda* rights despite defendant's young age, low IQ and status as special education student); *State* v. *Toste*, 198 Conn. 573, 581, 504 A.2d 1036 (1986) (adult with sixth or seventh grade level of intelligence and fairly low IQ effectively waived his rights). Sherbo and Teixiera testified that the defendant filled out the waiver form with his biographical information and initialed the form after each right was read to him and waived his rights by signing the lower portion of the waiver form. At that point, therefore, the defendant was fully aware that he was under arrest and that he had the right not to answer questions and, if he chose to answer questions, that he had the right to stop answering them at any time and the right to have an attorney present during the questioning.

Testimony as to whether the defendant requested an attorney was conflicting. The defendant's assertion at the hearing, however, that he had invoked his right to an attorney, although discredited by the trial court, indicates that he was familiar with his rights. See *State* v. *Whitaker*, 215 Conn. 739, 755, 578 A.2d 1031 (1990). Furthermore, Sherbo testified that the defendant indicated that he was willing to give the police a statement.

See *State* v. *Northrop*, supra, 213 Conn. 418–19 (defendant's express written and oral waiver strong proof that waiver valid). Teixiera testified that while the defendant was giving the written statement, he did not refuse to answer any questions nor did he indicate that he wanted to stop answering questions. Testimony from Sherbo and Teixiera indicated that upon completion of the written statement, the defendant was given an opportunity to make corrections and did not make any.

Other factors discussed in *State* v. *DaEria*, supra, 51 Conn. App. 166, also indicated that the defendant understood the *Miranda* warnings. There is no evidence in the record that he was under the influence of any drugs or suffering from a mental disease. In addition, the defendant claims that the waiver was invalid because of his inexperience with police procedures and with his *Miranda* rights. While a review of the record does not reveal that the defendant had any prior experience with the police, this fact alone is not sufficient to defeat a finding of waiver otherwise supported by the record. See *State* v. *Barrett*, 205 Conn. 437, 451, 534 A.2d 219 (1987). We conclude, therefore, that the trial court properly determined that the state proved by a preponderance of the evidence that the defendant knowingly and intelligently waived his *Miranda* rights.

The state must also prove by a fair preponderance of the evidence that the defendant's waiver of his rights was voluntary. *State* v. *DaEria*, supra, 51 Conn. App. 169. "A statement is voluntary if it is 'the product of an essentially free and unconstrained choice by its maker' . . . *State* v. *Downey*, 45 Conn. App. 148, 162, 694 A.2d 1367, cert. denied, 242 Conn. 909, 697 A.2d 367 (1997); '[i]f it is, if he has willed to [make a statement], it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his [statement] offends due process.' " *State* v. *Huckaby*, supra, 47 Conn. App. 529.

In his brief, the defendant makes no reference to police coercion, and our review of the record in this case reveals no evidence from which the court could infer that the police used threats or any other coercive tactic to elicit the waiver. Therefore, we conclude that the trial court properly determined that the state proved by a preponderance of the evidence that the defendant's waiver was voluntary. See *State* v. *DaEria*, supra, 169 (police overreaching crucial element in any inquiry into constitutional voluntariness).

Although there was substantial evidence before the trial court to support the finding that the defendant understood his *Miranda* rights and that he waived those rights, "[w]aiver is not conclusively established by demonstrating that *Miranda* warnings were given and understood. . . . In the absence of an express waiver, the state bears the heavy burden of demonstrating, as a matter of fact, that waiver can be clearly inferred from the actions and words of the person interrogated." (Citations omitted; internal quotation marks omitted.) *State* v. *Toste*, supra, 198 Conn. 582. We conclude that the record contains substantial evidence that the defendant "through his actions and words waived his right to remain silent." Id., 583. As we have noted, Sherbo testified that he asked the defendant whether he wanted to make a statement and the defendant immediately admitted that he had committed the double homicide. The lack of hesitancy to speak at that time presents some indicia that the defendant desired to speak and to waive his rights. See id., 583. Sherbo testified that he then stopped the defendant from making any further statements and advised the defendant of his *Miranda* rights. Specifically, Sherbo testified that he read each right to the defendant paragraph by paragraph, which the defendant initialed, thereby acknowledging to Sherbo that he understood the right, and then asked the defendant if he wanted to make a statement. Sherbo

also testified that the defendant agreed to make a statement. Teixiera testified that the defendant answered the various questions composing the written statement and was given an opportunity to make corrections. While the defendant signed each page of the written statement, he did not make any corrections to the substance of the answers. "Under these circumstances, the defendant's expressed willingness to speak constituted an explicit affirmative act evidencing waiver . . . ." (Internal quotation marks omitted.) Id. Accordingly, the trial court properly concluded that the defendant knowingly, intelligently and voluntarily waived his *Miranda* rights.

## II

In his second claim, the defendant invites us to exercise our general supervisory powers to require police officers to record all interrogations that take place in the police station or other place of detention. Specifically, the defendant asserts that this court should, pursuant to its supervisory powers, condition the admissibility of confessions at trial on the existence of corroborative evidence of the confessions made at police stations. The defendant further entreats us to apply that rule retrospectively to this appeal. We decline both invitations.

We are guided in the resolution of this claim by *State v. James*, supra, 237 Conn. 390. In *James*, the court held that such a procedure is not constitutionally required. Id., 434. Specifically, the court stated: "In sum, although we agree with the defendant that the recording of confessions and interrogations generally might be a desirable investigative practice, which is to be encouraged, we are not persuaded, in light of our history, precedent and flexible notions of due process, that conditioning the admissibility of confessions on their recording is a requirement of due process under the

state constitution. We, therefore, reject the defendant's claim." Id.

The defendant in *James* also urged the court that even if the procedure was not required under the constitution, the confession should be suppressed pursuant to the court's supervisory authority over the administration of justice. Id., 434–35 n.36. While we note that the *James* court denied this additional claim because the defendant failed to brief the issue properly, it noted that the issues in that case involved an "expansive exercise of [the court's] supervisory authority," and implied that the authority had been traditionally confined to the conduct of judicial actors. Id.; see also *State* v. *Santiago*, 245 Conn. 301, 332–34, 715 A.2d 1 (1998); *State* v. *Coleman*, 242 Conn. 523, 539–40, 700 A.2d 14 (1997).

Furthermore, in exercising its supervisory powers, the appellate tribunal has "frequently given only prospective effect to changes based strictly on policy considerations that do not carry constitutional implications." (Internal quotation marks omitted.) *State* v. *Hines*, 243 Conn. 796, 814, 709 A.2d 522 (1998). "Constitutional, statutory and procedural limitations are generally adequate to protect the rights of the defendant and the integrity of the judicial system. Our supervisory powers are invoked only in the rare circumstance where these traditional protections are inadequate to ensure the fair and just administration of the courts." Id., 815. Because acceptance of the defendant's invitation would require this court to exercise our supervisory powers outside the conduct of judicial actors, we decline to accept this invitation.

### III

The defendant finally requests that pursuant to *State* v. *Dash*, 242 Conn. 143, 150, 698 A.2d 297 (1997), which held that § 52-202k is a sentence enhancement provision

and not a separate substantive offense, this court should vacate his conviction under § 53-202k. The state concedes that *Dash* is controlling and that the defendant's conviction under § 53-202k should be vacated. We agree and vacate the defendant's conviction.

"Our Supreme Court has recently held that § 53-202k is a sentence enhancement provision and not a separate crime. *State* v. *Dash*, [supra, 242 Conn. 150]. In *Dash*, the court recognized that the defendant's total effective sentence was proper, but modified the judgment to reflect the fact that § 53-202k does not constitute a separate offense. Id. Accordingly, the defendant is entitled to have his conviction under § 53-202k vacated." (Internal quotation marks omitted.) *State* v. *Carter*, 47 Conn. App. 632, 649, 708 A.2d 213, cert. denied, 244 Conn. 909, 713 A.2d 828 (1998).

The defendant was sentenced to life imprisonment without the possibility of parole on the first count of capital felony in violation of § 53a-54b (8). The remaining counts were merged into the first count for a total effective sentence of life imprisonment without the possibility of parole. Accordingly, although the total effective sentence in this case was proper, it must be modified to reflect that § 53-202k was not a separate offense. See *State* v. *Dash*, supra, 242 Conn. 150.

The judgment is reversed only as to the separate conviction under § 53-202k and the case is remanded with direction to vacate the defendant's conviction under § 53-202k and to resentence the defendant in accordance with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.