## STATE OF CONNECTICUT *v.* JOSEPH FERNANDEZ III

The defendant's petition for certification for appeal from the Appellate Court, 52 Conn. App. 599 (AC 18201), is denied.

BERDON, J., dissenting. In cases involving the admissibility of confessions,[1] I am now convinced more than ever that our state constitution requires the state to prove two matters beyond a reasonable doubt: (1) the defendant did in fact make a confession; and (2) this confession was made voluntarily, knowingly and intelligently. I am also convinced that—absent extraordinary circumstances—the government can satisfy this burden only by electronically recording the entire encounter between the defendant and the agents of the state, starting with the administration of *Miranda*[2] warnings.

The facts of this case starkly illustrate why it is necessary both to (1) increase the burden of persuasion and (2) require the state to meet this burden by recourse to an electronic record. Some time after 9:30 p.m. on the evening of April 29, 1995, five police officers appeared at the home of the eighteen year old defendant, Joseph Fernandez III. The defendant agreed to accompany these officers to the police station. Once they arrived

---

[1] I use the term "confessions" to include all statements that may tend to incriminate the defendant.

[2] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

at the station, the defendant was asked if he wished to give a statement regarding a recent shooting.[3]

From this point on, the testimony in this case was fraught with contradictions. According to one police officer, the defendant allegedly confessed, "I shot him—I shot them." The defendant denied making this confession. Two other officers who were present did not corroborate the allegation made by their fellow officer. Although the trial court observed that the testimony was three to one that the defendant did not confess,[4] this observation did not prevent the court from admitting the confession into evidence. The defendant was convicted, and the Appellate Court affirmed the defendant's conviction on the following ground: "[We do] not retry the case or evaluate the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Fernandez*, 52 Conn. App. 599, 603, 728 A.2d 1 (1999).

I

I have previously explained that "valid and compelling historical reasons exist to require under the state constitution that the state has the burden of proving that a confession [was made and was] voluntary beyond a reasonable doubt. . . . [T]he value the framers of our state constitution placed on the right to remain silent is evident and important in determining the contours of the state constitutional protection. *State* v.

---

[3] The Appellate Court believed that the defendant was not subjected to the "inherently coercive, police-dominated atmosphere" of custodial interrogation. *State* v. *DesLaurier*, 230 Conn. 572, 581, 646 A.2d 108 (1994); see *State* v. *Piorkowski*, 236 Conn. 388, 404–405, 672 A.2d 921 (1996). I disagree. Because I believe that even noncustodial interrogations must be electronically recorded from the moment the police administer *Miranda* warnings, however, this disagreement is not outcome determinative.

[4] The trial court prefaced its ruling at the suppression hearing with the following remark: "To say that the testimony of the state's witnesses and the testimony of the defense's witnesses conflicted would be, obviously, an understatement."

*Geisler*, [222 Conn. 672, 685, 610 A.2d 1225 (1992)]. Zephaniah Swift, a leading jurist . . . of 1818, wrote in his treatise on the law that the confession must be perfectly voluntary: for if the *least degree of influence* appear to be exercised over the prisoner's mind, to induce him to disclose his guilt, the whole will be rejected. . . . 2 Z. Swift, A Digest of the Laws of the State of Connecticut (1823) p. 408. Justice Swift also pointed out in his treatise on evidence that voluntary confessions are deemed to be the most conclusive evidence . . . . Z. Swift, A Digest on the Law of Evidence (1810) p. 133. He noted, however, that [t]here is, perhaps, no part of evidence in which there is so much misrepresentation and fabrication, as in testifying to the confession of a party. Id., p. 149. . . . *State* v. *Stanley*, [223 Conn. 674, 698–99, 613 A.2d 788 (1992)] (*Berdon, J.*, dissenting). Indeed, in this state the salutary principle embodied in the constitution—that no man is bound to criminate himself—has ever been rigidly adhered to. *State* v. *Coffee*, 56 Conn. 399, 415, 16 A. 151 (1888). . . .

"Blackstone, in formally shaping the contours of our common law, wrote: [I]ndeed, even in cases of felony at the common law, [confessions] are the weakest and most suspicious of all testimony; ever liable to be obtained by artifice, false hopes, promises of favor, or menaces; seldom remembered accurately, or reported with due precision; and incapable in their nature of being disproved by other negative evidence. 4 W. Blackstone, Commentaries on the Laws of England (1807) p. 357. *State* v. *Stanley*, supra, 223 Conn. 699 (*Berdon, J.*, dissenting)." (Emphasis in original; internal quotation marks omitted.) *State* v. *James*, 237 Conn. 390, 451–52, 678 A.2d 1338 (1996) (*Berdon, J.*, dissenting).

In an effort to minimize the danger that inheres in permitting the trier of fact to consider such evidence,

"[e]very state but one in the northeast has adopted a standard of proof in excess of the preponderance of the evidence to determine the voluntariness of a confession. See *State* v. *Collins*, 297 A.2d 620 (Me. 1972) (reasonable doubt); *Commonwealth* v. *Mandile*, 397 Mass. 410, 492 N.E.2d 74 (1986) (same); *State* v. *Benoit*, 126 N.H. 6, 490 A.2d 295 (1985) (same); *State* v. *Franklin*, 52 N.J. 386, 245 A.2d 356 (1968) (same); *People* v. *Huntley*, 15 N.Y.2d 72, 204 N.E.2d 179, 255 N.Y.S.2d 838 (1965) (same); *State* v. *Arpin*, 122 R.I. 643, 410 A.2d 1340 (1980) (clear and convincing). Other states have also come to the same conclusion adopting the reasonable doubt standard. *Snellgrove* v. *State*, 569 N.E.2d 337 (Ind. 1991); *Bradley* v. *Commonwealth*, 439 S.W.2d 61 (Ky. 1969), cert. denied, 397 U.S. 974, 90 S. Ct. 1091, 25 L. Ed. 2d 268 (1970); *Jones* v. *State*, 461 So. 2d 686 (Miss. 1984); *State* v. *Drayton*, 287 S.C. 226, 337 S.E.2d 216 (1985) (same), overruled in part on other grounds, *State* v. *Torrence*, 305 S.C. 45, 70, 406 S.E.2d 315 (1991); *State* v. *Janis*, 356 N.W.2d 916 (S.D. 1984); *State* v. *Owens*, 148 Wis. 2d 922, 436 N.W.2d 869 (1989). We should join these jurisdictions." *State* v. *James*, supra, 237 Conn. 452–53 (*Berdon, J.*, dissenting).

Moreover, common sense dictates that the state must prove beyond a reasonable doubt (1) that the defendant confessed and (2) that he did so voluntarily, knowingly, and intelligently. In order to convict a criminal defendant, we require the state to prove its case beyond a reasonable doubt. Since a confession by the accused is tantamount to a conviction, it is only logical to require that the state must prove both the existence and the constitutionality of a confession beyond a reasonable doubt.

## II

We should also grant certification in order to determine whether evidence of a statement by a criminal

defendant is per se inadmissible unless the police recorded the entire encounter between the accused and the agents of the state, starting with the administration of *Miranda* warnings. In my view, such a regime would go a long way toward assuring that the accused actually made a disputed statement. In addition, it is the only certain way to enable the state to satisfy its burden of proving beyond a reasonable doubt (1) that the defendant in fact confessed and (2) that the confession was made voluntarily, knowingly and intelligently.

As Judge Fitzgerald put it in *People* v. *Fike*, 228 Mich. App. 178, 577 N.W.2d 903 (1998): "The court system is entitled to receive the best evidence available in order to resolve the serious criminal matters that come before it. A logical consequence of this principle is the need for the consistent systematic recording of all interviews of a detained accused conducted by law enforcement officials." Id., 190 (Fitzgerald, J., concurring and dissenting). "[A] recordation of all prestatement conversations and interrogation will afford a reviewing court an objective record on which to rule. . . . A recording requirement also discourages unfair and psychologically coercive police tactics and thus results in more professional law enforcement. . . . The courts are therefore presented with a situation in which the police, with only a minimal expenditure of effort and money, have the technical capability to preserve vital testimony to assure that the accused's rights have been observed and to validate the integrity of the actual interrogation." (Citations omitted.) Id., 188–89 (Fitzgerald, J., concurring and dissenting).

Judge Fitzgerald concluded his opinion by stating that "[a recording requirement], where feasible . . . is now a reasonable and necessary safeguard, essential to the adequate protection of the accused's right to counsel, his right against self-incrimination, and his right to a fair trial." Id., 190.

Accordingly, I dissent from this court's denial of the defendant's petition for certification to appeal.

*Lisa J. Steele*, special public defender, in support of the petition.

*Richard F. Jacobson*, assistant state's attorney, in opposition.

Decided June 9, 1999