## STATE OF CONNECTICUT *v.* RICHARD HAMLIN
### (AC 24108)

DiPentima, Gruendel and Dupont, Js.

446

Argued April 20—officially released July 26, 2005

*Adele V. Patterson*, assistant public defender, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *John F. Fahey*, assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Richard Hamlin, appeals from the judgment of conviction, rendered after a jury trial, of one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (5) and one count of carrying a pistol without a permit in violation of General Statutes § 29-35 (a). On appeal, the defendant claims that (1) his sixth amendment right to counsel was violated when a statement of his elicited by an alleged agent of the state, without the defendant's counsel being present, was used against him at trial, (2) the court improperly admitted identification evidence from William Moore and Omar Vaughn in violation of his due process rights, and (3) the application of General Statutes § 53-202k[1] is void for vagueness in a prosecu-

---

[1] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

tion for violation of § 53a-59 (a) (5). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On June 24, 2001, the defendant and Vaughn were involved in a fight on the sidewalk of 179 Mather Street in Hartford. The following day, Vaughn returned to 179 Mather Street on his bicycle, hoping to "peace up the situation" with the defendant. As Vaughn approached that location, the defendant emerged from a crowd, gun in hand. Vaughn immediately discarded his bicycle and ran. While running, Vaughn was shot in the back of his lower left thigh and knee. The defendant fled with Moore in a gold Oldsmobile Alero.

The defendant was charged by long form information with one count of assault in the first degree in violation of § 53a-59 (a) (5) and one count of carrying a pistol without a permit in violation of § 29-35 (a). The information also contained a notice of intent to seek sentence enhancement pursuant to § 53-202k. On December 16, 2002, the defendant filed a motion to suppress all identification testimony and a motion to dismiss the sentence enhancement allegation. After a hearing, both motions were denied. Following trial, the jury found the defendant guilty on both counts of the information. The court subsequently sentenced the defendant to thirteen years imprisonment, five years mandatory minimum, followed by ten years of special parole. After filing the present appeal with this court, the defendant filed with the trial court a "motion for rectification and/or enlargement of the record," in which he requested, inter alia, a hearing pursuant to *State* v. *Floyd*, 253 Conn. 700, 731–38, 756 A.2d 799 (2000). By memorandum of decision filed June 23, 2004, the court granted in part and denied in part that motion.[2] Additional facts will be set forth as necessary.

---

[2] The court granted the defendant's request to rectify the record to include his discovery requests.

## I

The defendant first raises a claim concerning his sixth amendment right to counsel. After filing this appeal, the defendant filed a postjudgment motion with the trial court to enlarge the record by holding a hearing to include additional facts as to whether his sixth amendment right to counsel was implicated when he spoke to Moore while in a holding cell. Citing Practice Book § 5-2,[3] the court denied that request. Acknowledging that his sixth amendment claim was not raised at trial, the defendant requests review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4] We must decline his invitation because the record is inadequate for review.

The following additional facts are pertinent to the defendant's claim. On the day of the shooting, Moore voluntarily entered the Hartford police station and gave a statement. In that statement, he indicated that, from his car, he had witnessed the events that unfolded in front of 179 Mather Street. Moore stated that after the assailant shot Vaughn, the assailant entered Moore's

---

[3] Practice Book § 5-2 provides: "Any party intending to raise any question of law which may be the subject of an appeal must either state the question distinctly to the judicial authority in a written trial brief under Section 5-1 or state the question distinctly to the judicial authority on the record before such party's closing argument and within sufficient time to give the opposing counsel an opportunity to discuss the question. If the party fails to do this, the judicial authority will be under no obligation to decide the question."

[4] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40. The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review. *State* v. *Jordan*, 64 Conn. App. 143, 150, 781 A.2d 310 (2001).

vehicle and told Moore to drive. Because the assailant was armed, Moore "did what he said and dropped him off on the next corner." Moore did not identify the assailant in his June 25, 2001 statement to the police.

On December 16, 2002, the defendant filed a motion to suppress "any and all testimony concerning any in-court or out-of-court identification of the defendant by any witness, including, but not limited to, Omar Vaughn." On December 17, 2002, Moore, who was being held in lieu of bond on various charges regarding an unrelated domestic incident, was brought to court pursuant to a writ of habeas corpus ad testificandum. On that day, the defendant and Moore were placed in the same holding cell at the Hartford Superior Court. While in the cell, the defendant stated to Moore, "You know, if they put you on the stand, just say you wasn't with me." That same day, Moore made his first identification of the defendant as the assailant in this case. Moore testified at both the December 18, 2002 suppression hearing and at trial as to the defendant's statement in the holding cell, which the prosecution used as evidence of the defendant's consciousness of guilt.

The crux of the defendant's contention is that when Moore entered the holding cell on December 17, 2002, he did so as an agent of the state. As such, he argues that admission of his statement to Moore at trial violated his right to counsel. The defendant concedes that his claim was not preserved at trial. He first raised the claim in his postjudgment motion for rectification or enlargement of the record, but the court did not reach the claim. Rather, it declined review pursuant to Practice Book § 5-2.

This court lacks the requisite factual basis to entertain the defendant's claim as required by *Golding*'s first prong. At its essence, the claim alleges that Moore was a state agent who deliberately elicited the defendant's

statement in the holding cell. See *State* v. *Swinton*, 268 Conn. 781, 855–56, 847 A.2d 921 (2004). The record reveals only that the defendant and Moore were placed together in a holding cell on December 17, 2002. While Moore met with an inspector for the state that same day, the record is silent as to whether that meeting occurred before or after the defendant made the statement to Moore in the holding cell. Although presented with ample opportunity to explore the issue during cross-examination of Moore, defense counsel raised not a single query as to the holding cell conversation or the surrounding circumstances.[5] We recently observed that "[s]peculation and conjecture have no place in appellate review. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record . . . ." (Internal quotation marks omitted.) *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 815, 875 A.2d 71 (2005). The paucity of facts in the record concerning this issue precludes us from undertaking a determination of whether Moore was a state agent who deliberately elicited the defendant's statement in the holding cell. We therefore decline *Golding* review of the defendant's claim.[6]

[5] At oral argument before this court, the defendant conceded that nothing in the record indicates that Moore received anything in exchange for cooperating with the prosecution. Moreover, Moore testified at trial that he was neither promised nor did he expect anything in terms of help in his pending case.

[6] We note further that the limited record before us discloses no evidence that Moore was anything other than a passive listener in the holding cell. Our Supreme Court recently explained that "[a] defendant does not . . . make out a constitutional violation simply by showing that an informant, either through prior arrangement or voluntarily, reported [the defendant's] incriminating statements to the police. . . . Although the government [has] an affirmative obligation not to solicit incriminating statements from the defendant in the absence of his counsel, there is no constitutional violation when a government informant merely listens and reports." (Citation omitted; internal quotation marks omitted.) *State* v. *Swinton*, supra, 268 Conn. 859. In the absence of evidence to the contrary, the defendant's claim also appears to fail to satisfy *Golding*'s third prong.

In the alternative, the defendant requests that we remand the matter to the trial court for an evidentiary hearing pursuant to *State* v. *Floyd*, supra, 253 Conn. 732. We decline to do so. The circumstances underlying the present appeal are readily distinguishable from those in *Floyd*. In *Floyd*, it was only *after* the defendant was convicted that his counsel obtained additional evidence concerning favorable treatment of a state's witness. After the trial court in *Floyd* denied the motion for rectification or augmentation of the record, the defendant then filed a consolidated motion, requesting our Supreme Court to exercise its supervisory powers pursuant to Practice Book § 60-2 and for review of the trial court's denial of the defendant's motion for rectification or augmentation of the record pursuant to Practice Book § 66-7. The court granted the defendant's motion for review and ordered the trial court to hold an evidentiary hearing to determine whether the witness and the state had a plea agreement when the witness testified at trial. *State* v. *Floyd*, supra, 732.

By contrast, prior to trial, defense counsel in the present case was aware of the holding cell conversation between the defendant and Moore. As the trial court stated in its memorandum of decision on the defendant's motion for rectification or enlargement of the record: "The defendant knew about the circumstances regarding Moore being placed in the same cell with the defendant on the day that it occurred and was given the opportunity to address the witness regarding that circumstance during counsel's cross-examination of the witness. Defense counsel had multiple opportunities to explore this situation when Moore was on the [witness] stand. Not only did the defense not explore the situation while the witness was on the stand, but counsel objected when the state's attorney sought to examine the witness regarding the witness and the defendant

being placed in the same cell." The court therefore denied the motion, concluding that the defendant had ample opportunity to raise his sixth amendment claim and to develop the record concerning that claim during the trial.[7] We agree with the trial court. The defendant chose not to take advantage of the opportunities to explore the circumstances surrounding the holding cell conversation or to file a motion to suppress the alleged consciousness of guilt statement made therein. "Our rules of procedure do not allow a defendant to pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 246, 864 A.2d 666 (2004).

*Floyd* presented the unusual situation in which a defendant was precluded from perfecting the record due to new information obtained after judgment. *State* v. *Floyd*, supra, 253 Conn. 730. The present case is inapposite. The defendant was aware, prior to both the suppression hearing and trial, that the holding cell conversation had occurred. Accordingly, we refuse to remand the matter for the requested *Floyd* hearing.

The remaining question is whether the court's decision not to decide the defendant's sixth amendment claim was proper. Practice Book § 5-2 provides: "Any party intending to raise any question of law which may be the subject of an appeal must either state the question distinctly to the judicial authority in a written trial brief under Section 5-1 or state the question distinctly to the judicial authority on the record before such party's closing argument and within sufficient time to give the opposing counsel an opportunity to discuss the question. If the party fails to do this, the judicial authority

---

[7] Unlike the situation in *Floyd*, the defendant did not file a motion for review. See Practice Book § 66-7.

will be under no obligation to decide the question." The defendant raised his sixth amendment claim for the first time in a motion filed more than ten months after judgment was rendered.[8] Because the defendant failed to raise the question of law as required by Practice Book § 5-2, we cannot say that the court's decision not to decide the claim was improper.

## II

The defendant next challenges the admission of identification evidence from Moore.[9] Our review of such claims is well established. "[B]ecause the issue of the reliability of an identification involves the constitutional rights of an accused . . . we are obliged to examine the record scrupulously to determine whether the facts found are adequately supported by the evidence and whether the court's ultimate inference of reliability was reasonable. . . . [Our inquiry] is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on

---

[8] In *Biller Associates* v. *Rte. 156 Realty Co.*, 52 Conn. App. 18, 24, 725 A.2d 398 (1999), aff'd, 252 Conn. 400, 746 A.2d 785 (2000), we concluded that, although "less than clear when raised on the record . . . the defendant satisfied Practice Book § 5-2 by distinctly raising [the] claim in its posttrial brief." The defendant has presented no authority, nor has this court found any, indicating that a claim raised for the first time in a postjudgment motion complies with Practice Book § 5-2.

[9] The defendant also alleges that because Vaughn's identification was premised on information "learned from unidentified sources," Vaughn's identification of the defendant violated his constitutional rights. His argument lacks legal analysis and citation to legal authority. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *State* v. *Colon*, supra, 272 Conn. 153 n.19. We therefore decline to address his claim.

an examination of the totality of the circumstances. . . . To prevail in his claim, the defendant must demonstrate that the trial court erred in both of its determinations regarding suggestiveness and reliability of identifications in the totality of the circumstances." (Citations omitted; internal quotation marks omitted.) *State* v. *Taylor*, 239 Conn. 481, 498, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997).

The defendant claims that the court violated his federal constitutional right to due process of law by denying his pretrial motion to suppress Moore's identification of him as the assailant. The defendant argues that the procedure that led to Moore's identification of him was impermissibly suggestive, rendering the resulting identification unreliable.[10] We disagree.

The following additional facts are relevant to the defendant's claim. On December 17, 2002, Moore met with James C. Rovella, an inspector with the state's attorney's office. During that meeting, Rovella presented Moore with a stack of photographs. As Rovella recounted at the suppression hearing: "I instructed [Moore that] I had eight photographs. They were all numbered one through eight on the back. I handed them to him in a stack. I told him to look through each individual photograph. And I told him I'm not saying that the person's in here or he's not in here. I just want to look—have him look through the photographs and

---

[10] The state argues in response that Moore's viewing of photographs was not an *identification* of the defendant, but rather merely a *confirmation* that the defendant was, indeed, the person the police had arrested. See, e.g., *People* v. *Vargas*, 118 Misc. 2d 477, 480–81, 461 N.Y.S.2d 678 (1983) ("Where the defendant is known to and is a familiar figure to the witness before the crime, there is virtually no danger of a trial misidentification owing to a pretrial viewing . . . . Where the witness . . . knows the defendant, suggestiveness is irrelevant . . . ." [Citation omitted.]). Because we agree with the trial court that the identification procedure was not impermissibly suggestive, we need not consider the state's argument.

see if he knew anybody in the photographs." After examining the array, Moore identified the photograph of the defendant as that of the assailant. Moore told Rovella that he had known the defendant "from Hartford, from the streets, for four or five years." Rovella testified that he provided no hints to Moore and that nothing was "done to cause Moore to pick a photograph out other than of his own volition."

Following the hearing, the court denied the defendant's motion to suppress. The court concluded that the identification procedure was not unnecessarily suggestive. As it stated: "The police . . . used multiple photographs and did not rely on a single photograph. [The array was] comprised of photographs of individuals who all strongly resembled the defendant. There were no suggestions made to . . . Moore that a photograph of the suspected perpetrator was located in the [array] presented to [him]. There were no verbal or physical hints given by the police to . . . Moore to suggest . . . who [he] should select from the [array] or even that [he] should select someone from [the array]." "An identification procedure is unnecessarily suggestive only if it gives rise to a very substantial likelihood of irreparable misidentification." *State* v. *White*, 229 Conn. 125, 161–62, 640 A.2d 572 (1994). After carefully reviewing the record, we agree with the trial court that the identification procedure here does not give rise to such a likelihood.

Although the court also determined that the identification was reliable, we need not address that aspect of its decision. "If the procedures used to identify the defendant were not unnecessarily suggestive, we need not independently analyze whether the identification was reliable." (Internal quotation marks omitted.) *State* v. *Taylor*, supra, 239 Conn. 499. Accordingly, the court's denial of the defendant's motion to suppress the identification evidence from Moore was proper.

## III

The defendant's final claim is that application of § 53-202k is void for vagueness in a prosecution for violation of § 53a-59 (a) (5).[11] Specifically, he alleges that he was the victim of arbitrary enforcement practices. The defendant did not preserve his claim before the trial court and now seeks *Golding* review. We review the defendant's claim because the record is adequate for review, and the claim is of constitutional magnitude.[12] See *State* v. *Burton*, 258 Conn. 153, 158, 778 A.2d 955 (2001). Because the defendant cannot establish that the alleged constitutional violation clearly exists, his claim fails *Golding*'s third prong.

We note first the applicable legal principles. "The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution." Id. "A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, [and a court makes] every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to him, the [defendant] therefore must . . .

---

[11] In his brief, the defendant posits that "in every case where the state proves the offense of assault in the first degree in violation of General Statutes § 53a-59 (a) (5), intentionally causing physical injury 'by means of the discharge of a firearm,' it also will have proved that the person who committed that class B felony used 'a firearm' under General Statutes § 53-202k." That argument echoes the refrain of a double jeopardy claim, which the defendant has not pursued on appeal. Moreover, in *State* v. *McMahon*, 257 Conn. 544, 558–62, 778 A.2d 847 (2001), cert. denied, 534 U.S. 1130, 122 S. Ct. 1069, 151 L. Ed. 2d 972 (2002), our Supreme Court held that application of the § 53-202k sentence enhancement provision to an underlying offense which has, as an element, the use of a firearm, does not place a defendant in double jeopardy for that same offense.

[12] The defendant fails to identify the precise constitutional provision under which his claim is brought. Because his brief contains no independent state constitutional analysis, we limit our review to the federal constitution. See *State* v. *Merriam*, 264 Conn. 617, 631 n.17, 835 A.2d 895 (2003).

demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning. . . .

"The general rule is that the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue. . . . To do otherwise, absent the appearance that the statute in question intrudes upon fundamental guarantees, particularly first amendment freedoms, would be to put courts in the undesirable position of considering every conceivable situation which might possibly arise in the application of [the statute]. . . . Thus, outside the context of the first amendment, in order to challenge successfully the facial validity of a statute, a party is required to demonstrate as a threshold matter that the statute may not be applied constitutionally to the facts of [the] case." (Internal quotation marks omitted.) *State* v. *Lewis*, 273 Conn. 509, 514–15, 871 A.2d 986 (2005).

The defendant in the present case cannot overcome that threshold burden. Our Supreme Court has explained that "in evaluating the defendant's challenge to the constitutionality of the statute, we read the statute narrowly in order to save its constitutionality, rather than broadly in order to destroy it. . . . In so doing,

we take into account any prior interpretations that this court [and] our Appellate Court . . . have placed on the statute." (Citations omitted; internal quotation marks omitted.) *State* v. *Indrisano*, 228 Conn. 795, 805, 640 A.2d 986 (1994). The court interpreted § 53-202k in *State* v. *McMahon*, 257 Conn. 544, 778 A.2d 847 (2001), cert. denied, 534 U.S. 1130, 122 S. Ct. 1069, 151 L. Ed. 2d 972 (2002). It stated: "The use of the modifier any suggests an affirmative attempt by the legislature to subject all class A, B or C felonies to § 53-202k's five year enhancement. Moreover, the statute makes no exception for class A, B or C felonies that have, as an element, the use of a firearm. . . . [Section] 53-202k was intended . . . [to add] five years to the end of *whatever other sentence* [a defendant is] receiving as a consequence of these acts." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 561–62.

Following trial, the defendant was convicted of assault in the first degree in violation of § 53a-59 (a) (5). Section 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm." That offense is a class B felony.

Section 53-202k[13] provides in relevant part that "[a]ny person who commits any class A, B or C felony and in the commission of such felony uses . . . any firearm, as defined in section 53a-3 . . . shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to

---

[13] Connecticut appellate courts consistently have held that General Statutes § 53-202k is a sentence enhancement provision, not a separate felony offense. See *State* v. *Dash*, 242 Conn. 143, 146, 698 A.2d 297 (1997); *State* v. *Fernandez*, 52 Conn. App. 599, 616, 728 A.2d 1, cert. denied, 249 Conn. 913, 733 A.2d 229, cert. denied, 528 U.S. 939, 120 S. Ct. 348, 145 L. Ed. 2d 272 (1999).

any term of imprisonment imposed for conviction of such felony." The defendant's conviction under § 53a-59 (a) (5) satisfies the requirements of that sentence enhancement statute. Moreover, the legislature's use of the word "shall" in § 53-202k,[14] coupled with the *McMahon* precedent, amply supports the conclusion that the legislature intended the sentence enhancement to apply to a conviction under § 53a-59 (a) (5). As such, the statute may be applied constitutionally to the facts of this case. Accordingly, the defendant cannot prevail on his unpreserved constitutional challenge.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[14] "Definitive words, such as 'must' or 'shall,' ordinarily express legislative mandates of a nondirectory nature." *Doe* v. *Statewide Grievance Committee*, 240 Conn. 671, 681, 694 A.2d 1218 (1997).